683 So.2d 1196 (1996)
In re Judge Michael JOHNSON.
No. 96-O-1866.
Supreme Court of Louisiana.
November 25, 1996.
Rehearing Denied December 13, 1996.
*1197 Steven Robert Scheckman, New Orleans, Timothy Joseph Palmatier, Metairie, Graydon D. Kitchens, Jr., Minden, for Applicant.
Camille F. Gravel, Jr., Gregory Brian Upton, Charles David Elliott, Alexandria, for Respondent.
PER CURIAM.[1]
The Louisiana Judiciary Committee has recommended that Judge Michael Johnson be removed from office. After consideration of the parties' Stipulation of Uncontested Material Facts, the Judiciary Commission determined that Johnson violated Canons 1, 2A, 5C(1) and (2) of the Code of Judicial Conduct, engaged in willful misconduct relating to his official duty and persistent and public conduct prejudicial to the administration of justice that brings that judicial office into disrepute pursuant to La. Const. art. 5, § 25(C).
Because the record demonstrates by clear and convincing evidence that Johnson has persistently behaved with a flagrant disregard for his ethical obligations as a judge, we adopt the recommendation of the Judiciary Committee and order that Michael Johnson be removed from office as a judge of the Twelfth Judicial District Court of Louisiana. 1974 La. Const. art. 5, § 25(C).

FACTS
The facts throughout this opinion are based upon the Statement of Stipulated Uncontested Material Facts and the exhibits introduced in support. The Judiciary Commission convened a hearing on the present charge on May 31, 1996. However, in lieu of receiving testimony from witnesses at the formal hearing, a Stipulation of Uncontested Material Facts was entered into by Johnson, his counsel, and Special Counsel. The Stipulation was signed and agreed to by all parties. *1198 The Stipulation was accepted and adopted verbatim by the Commission in its Findings of Fact, Conclusions of Law and Recommendation.
Judge Michael Johnson was elected to and assumed the office of Judge of the Twelfth Judicial District Court on January 1, 1991. Before and after assuming office, Johnson, together with a partner, Louis Foster, owned and operated Cajun Callers, which provided pay telephone service for all Avoyelles Parish jail inmates. Bill Belt, Sheriff of Avoyelles Parish, operated the facilities. Judge Johnson was responsible for the management of Cajun Callers both before and after he became a judge. He negotiated several contracts on behalf of Cajun Callers, applied for Cajun Callers' Public Service Commission registration, and received substantial income from Cajun Callers.
Cajun Callers operates under an agreement between Sheriff Belt and Judge Johnson, which gives Cajun Callers the exclusive right to provide pay telephone service for all of the Avoyelles Parish jail facilities. Cajun Callers receives a percentage of the pay telephone charges collected from jail inmates. The November, 1988 placement agreement was renegotiated in May 1992 with an expiration date of June 30, 1996.
On May 8, 1992, Cajun Callers transferred (Bill of Sale and Assignment) to Peoples Telephone Company, Inc. certain telephones and equipment. Cajun Callers retained the exclusive right to the prison pay telephone lines, making Peoples dependent on Cajun Callers' underlying placement agreement with Sheriff Belt. Pursuant to the "Bill of Sale and Assignment," Cajun Callers continues to receive a percentage of the pay telephone charges collected from Avoyelles Parish prison inmates.
Judge Michael Johnson reported on his income tax returns from 1991 through 1994, the following gross and net income from Cajun Callers:

 gross net
1991 $ 62,964.00 $ 5,097.00
1992 $115,262.00 $ 44,851.00
1993 $142,206.00 $ 46,406.39
1994 $145,769.46 $ 55,264.13
 ___________ ___________
Total: $466,201.46 $151,618.52

Judge Johnson and his wife, Rae Ellen Johnson, earned the following gross income in 1995 (canceled checks were introduced into evidence because the Johnsons received 1995 income tax time extensions):

 $220,542.62 (checks made payable to
 Michael J. Johnson)
 $ 34,073.82 (checks made payable to
 Rae Ellen Johnson)
 ___________
Total: $254,616.44

PROCEEDINGS BY JUDICIARY COMMISSION
Previous to the current charges, the Judiciary Commission filed Formal Charge No. 0044 on August 15, 1994. It alleged that Judge Johnson abused and exceeded his authority as judge by ordering the arrest and incarceration of Elvin Walker for misdemeanor state traffic offenses, Judge Johnson being the alleged victim and complainant. In lieu of a hearing on Formal Charge No. 0044, Johnson entered into a Deferred Discipline Agreement wherein he stipulated to an informal probationary period of two years and a consent discipline of a "suspension from office for a period of six (6) months, without salary, by the Supreme Court" if new charges were filed and found to be meritorious by the Supreme Court.
On December 12, 1995, a "new" Formal Charge No. 0057 was filed before the Commission alleging that Johnson's operation and management of Cajun Callers violated Canons 1, 2A, 5C(1) and (2) of the Code of Judicial Conduct and constituted willful misconduct relating to his official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Formal Charge No. 0057 also incorporated the terms and conditions of the Deferred Discipline Agreement in Charge No. 0044.
The Commission convened a hearing on Formal Charge No. 0057 on May 31, 1996 and accepted a Stipulation of Uncontested Material Facts agreed to by all parties. On July 19, 1996, the Commission rendered its Findings of Fact, Conclusions of Law and Recommendations. The Commission found that due to his involvement with Cajun Callers, Judge Johnson violated Canons 1, 2A, *1199 5C(1) and (2) of the Code of Judicial Conduct and engaged in willful misconduct relating to his official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The Commission also found that under the terms of the Consent Discipline Agreement in Formal Charge No. 0044, Judge Johnson violated Canons 1 and 2A of the Code of Judicial Conduct and again engaged in willful misconduct relating to his official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
The Commission concluded that Judge Michael Johnson "is unfit to hold the office of judge" and recommended that he be removed from office as a judge of the Twelfth Judicial District Court pursuant to Article 5, § 25(C) of the Louisiana Constitution and that he be ordered to pay the costs incurred in the investigation and prosecution of his case, pursuant to Supreme Court Rule 23, Section 22.

LAW AND DISCUSSION
Authority for judge discipline is set forth in 1974 La. Const. art. 5, § 25(C):
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.
In addition to these constitutional grounds, this Court, under its supervisory authority over all lower courts, adopted the Code of Judicial Conduct, effective January 1, 1976. This Code is binding on all judges, and violations of the Canons may serve as a basis for the disciplinary action provided for in La. Const. art. 5, § 25(C). In re Wilkes, 403 So.2d 35, 40 (La.1981); In re Babineaux, 346 So.2d 676, 680-81 (La.1977), cert. denied, 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 299 (1977).
Pursuant to La. Const. art. 5, § 25(C), this Court may exercise exclusive original jurisdiction to remove a judge from office on recommendation of the Judiciary Commission. In re Whitaker, 463 So.2d 1291, 1302 (La.1985); Small v. Guste, 383 So.2d 1011, 1013-14 (La.1980). Whitaker recognized that this Court is the court of original jurisdiction in judicial disciplinary proceedings with the factfinding function. Id. at 1298. Because this Court is not equipped to receive evidence, judicial disciplinary proceedings evidence is received at the Commission hearing, and factual determinations are made by this Court on the basis of the hearing record. Id.; In re Huckaby, 95-0041 p. 5 (La.5/22/95), 656 So.2d 292, 296; In re Decuir, 95-0056 p. 7 (La.5/22/95), 654 So.2d 687, 692.
The charge or charges against a judge must be proven by clear and convincing evidence before the Court may censure, suspend with or without salary, remove from office or involuntarily retire a judge. Huckaby, 95-0041 at p. 6, 656 So.2d at 296; In re Chaisson, 549 So.2d 259, 263 n. 4 (La. 1989); In re Daniels, 340 So.2d 301, 306 (La.1976) (stating that the standard of proof in judicial discipline cases is the clear and convincing evidence standard).
Judge Johnson is accused of violating Canons 1, 2A, 5C (1) and (2) of the Code of Judicial Conduct and the constitutional standard established in La. Const. art. 5, § 25(C). Therefore, the record must clearly and convincingly establish that Johnson violated Canons 1, 2A, 5C (1) and (2) and that Johnson was guilty of engaging in willful misconduct relating to his official duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
Canon 1 requires a judge to observe high standards of conduct to uphold the integrity and independence of the judiciary. It provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct *1200 so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
Canon 2A requires a judge to avoid both actual impropriety and the appearance of impropriety. Canon 2A provides:
A Judge Should Avoid Impropriety and the Appearance of Impropriety in all Activities.
A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Canons 5C(1) and (2) govern judges' financial dealings. Canon 5C(1) provides:
A judge should refrain from financial and business dealings that tend to reflect adversely on the judge's impartiality, interfere with the proper performance of judicial duties, exploit the judge's judicial position, or involve the judge in frequent transactions with lawyers or persons likely to come before the court on which he or she serves.
Canon 5C(2) generally permits a judge to engage in business endeavors but prohibits a judge from serving "as an officer, director, manager, or employee of any ... public utility, and other businesses affected with a public interest."
Judge Johnson has admitted to all the facts necessary to determine whether he violated the Code of Judicial Conduct in the Statement of Stipulated Uncontested Material Facts jointly submitted by all parties and accepted by the Commission. In fact, Judge Johnson essentially admitted to violating Canons 5C(1) and (2). As to 5C(1), Stipulation 10 states:
The placement agreements dated November 1, 1988 and May 8, 1992 by and between Cajun Callers, through its President, Michael Johnson, and Bill Belt, Sheriff of Avoyelles Parish, involve Judge Johnson in frequent transactions with persons likely to come before his court on which he serves, namely: Bill Belt, Sheriff of Avoyelles Parish, and his deputies; and, inmates incarcerated in Avoyelles Parish correctional facilities. (emphasis added).
As to Canon 5C(2), Stipulations 8 and 9 state:
A pay telephone system, including that of Cajun Callers which was owned and operated by Judge Michael Johnson, is a public utility subject to regulation by the Louisiana Public Service Commission.
Michael Johnson, as President of Cajun Callers, served as an officer and operator of a public utility, Cajun Callers. Judge Michael Johnson was responsible for the management of Cajun Callers (emphasis added).
Because Judge Johnson agreed to stipulations encapsulating the essence of ethical violations under Canons 5(C)1 and 2, our inquiry as to Johnson's violations of these Canons is at an end. See Decuir, 95-0056 at p. 8, 654 So.2d at 692 (finding that because the parties stipulated to the relevant facts and the judge admitted that the facts establish violations of the Code of the Judicial Conduct, the Court is "left only with the task of deciding the appropriate measure of discipline in this case").
Moreover, Johnson's contract with Sheriff Belt for the operation and management of Cajun Callers (which earned $684,744.08 in gross income, and approximately $225,118.52 in net income from prison inmates' use of pay telephones in the Avoyelles Parish jail facilities) casts doubt on the impartiality and independence of the court and is prejudicial to the administration of justice. This financial scheme involves a continuous flow of money from Avoyelles Parish prisons to Judge Johnson through Sheriff Belt as a conduit, creating both an actual and appearance of impropriety.
The fundamental tenet underlying the Code of Judicial Conduct is the independence and impartiality of the judiciary. Canons 1, 2, 5C(1) and (2) are all imbued with this fundamental tenet and endeavor to safeguard the integrity and honor of the judiciary. In keeping with these goals, this Court has repeatedly stated that "[t]he off-bench behavior *1201 of a judge should not only be above reproach but such as to inspire confidence of the public in the judiciary." In re Haggerty, 257 La. 1, 241 So.2d 469, 478 (1970). In re Babineaux explained:
Judges are not merely elected public officials. Their role in the administration of justice makes them a special breed. The administration of justice requires adherence by the judiciary to the highest ideals of personal and official conduct. If judges openly flaunt the legal and constitutionally sanctioned and adopted Canons of the Code of Judicial Conduct, there is no question but that such persistent and public conduct is prejudicial to the administration of justice and that it does bring the judicial office into disrepute. 346 So.2d at 681.
The Canons allow judges to conduct business, and to make a profit from that business as long as the judge's business interests do not reflect adversely on his impartiality or involve the judge in frequent transactions with persons likely to come before his court. Judge Johnson legitimately became involved with Cajun Callers before he became a judge. It was Judge Johnson's continuation of that business after he became a judge which violated the Code's mandates. Contrary to Johnson's latest assertions, the undisputed facts establish that he has been actively engaged in the management and operation of Cajun Callers while serving as a judge on the Twelfth Judicial District Court. Judge Johnson has made significant sums of money from the Avoyelles prisons through his arrangement with Sheriff Belt. This is an unacceptable infringement on the impartiality, independence and integrity demanded of the judiciary.
Judge Johnson contends that he divested himself of his interest in Cajun Callers with the May 8, 1992 "Sale and Assignment" to Peoples Telephone Company. However, Johnson's financial dealing with Avoyelles Parish prisons and Sheriff Belt did not cease after this contract with Peoples Telephone. In fact, Johnson made more money from Cajun Callers following this arrangement with Peoples than in preceding years (evidenced by Johnson's tax returns). Furthermore, the Peoples Telephone arrangement is dependent on Cajun Callers' underlying placement contract with Sheriff Belt that gives Cajun Callers the exclusive right to service the Avoyelles Parish prison telephone lines. The agreement between Cajun Callers and Peoples Telephone gives Cajun Callers 30% of People's future income from Avoyelles Parish prison pay phones.
Johnson likewise contends that he completely divested himself of all his Cajun Callers interest when he transferred it to his wife, who is separate in property, in November 1995. Johnson's purported transfer of his Cajun Callers' interests to his wife (for no monetary consideration) did not serve to divest him of all involvement in and profit from Cajun Callers. Had Johnson truly been interested in divesting himself of his Cajun Callers interest, he would have sold his interest for a fair price to a disinterested third party.
The judiciary, the sheriff and the prisons are all indispensable, separate components of our system of justice. There should be no financial dealing, bargaining and profiteering among these justice system components. One who persists in this type of misconduct and does not comprehend the impropriety of such actions cannot hold the office of judge.
It is for this reason that we impose the most severe sanction, removal from office. We are mindful that
removal of a duly elected member of the judiciary is a serious undertaking which should only be borne with the utmost care so as not to unduly disrupt the public's choice for service in the judiciary. However, this state's constitution vests this court with the duty to preserve the integrity of the bench for the benefit of that same public by ensuring that all who don the black robe and serve as ministers of justice do not engage in public conduct which brings the judicial office into disrepute. Huckaby, 95-0041 at p. 10, 656 So.2d at 298.
As in Huckaby, "[t]he record in this case unequivocally proclaims that respondent engaged in the type of conduct that perniciously erodes public confidence in the integrity of the judiciary, and he must, therefore, be removed from office." Id. Judge Johnson *1202 has engaged in a persistent, willful pattern of misconduct that has inflicted significant damage on his court; damage that can only be repaired with Judge Johnson's removal.
Our finding that the charges against Judge Johnson are meritorious triggers the terms of the 1994 Deferred Discipline Agreement entered into by respondent concerning the Judiciary Commission's charge that Judge Johnson ordered the arrest and incarceration of Elvin Walker for misdemeanor state traffic offenses when Johnson was the alleged victim and complainant. Under the terms of the Deferred Discipline Agreement, Judge Johnson agreed to a consent discipline of a six month suspension from office if new charges were filed and found to be meritorious by this Court. Although the discipline agreed to in the Deferred Discipline Agreement is subsumed by this Court's removal from office, the prior discipline indicates a pattern of misconduct and ethical problems which further underscores the need for the instant discipline.
Johnson argues that the disciplinary proceedings below violated his due process rights under Allen v. State Bd. of Dentistry, 543 So.2d 908 (La.1989), because Special Counsel Steven Scheckman served as the investigator, prosecutor, and author of the recommendations of the Commission. This argument is factually inaccurate and lacks merit. Special Counsel properly submitted Proposed Findings of Fact, Conclusions of Law and Recommendation for Discipline to the Commission and served them on Judge Johnson's counsel. Judge Johnson had an opportunity to respond to the Proposed Findings. The Commission subsequently authored its own Findings of Fact, Conclusions of Law and Recommendation. This procedure clearly comports with due process under Allen.

CONCLUSION
As this Court has recognized, "[t]he most severe discipline should be reserved for judges who use their office improperly for personal gain; judges who are consistently abusive and insensitive to parties, witnesses, jurors and attorneys; judges who because of laziness or indifference fail to perform their judicial duties to the best of their ability; and judges who engage in felonious criminal conduct." Whitaker, 463 So.2d at 1303. Under the Whitaker guidelines, the most severe discipline is warranted since Judge Johnson has repeatedly abused his position as judge for personal gain. Accordingly, it is ordered, adjudged, and decreed that respondent, Judge Michael Johnson, of the Twelfth Judicial District Court for the Parish of Avoyelles, State of Louisiana, be, and is hereby, removed from office; and that his office be, and is hereby, declared vacant. Respondent is cast with all stipulated costs and any other costs incurred in the investigation and prosecution of his case pursuant to Supreme Court Rule XXIII, § 22.
REMOVAL FROM JUDICIAL OFFICE ORDERED.
NOTES
[1] Johnson, J., not on panel. Rule IV, § 3.