713 So.2d 1138 (1998)
In re Judge Sharah HARRIS formerly known as Sharah Mulmore.
No. 98-O-0570.
Supreme Court of Louisiana.
July 8, 1998.
Steven Robert Scheckman, New Orleans, for Applicant.
J.J. McKernan, Ernest L. Johnson, Baton Rouge, Sharah Harris Mulmore, Plaquemine, Gordon J. McKernan, Baton Rouge, for Respondent.
Nancy E. Rix, Hugh M. Collins, Ph.D., New Orleans, for Judiciary Commission.
KNOLL, Justice.[*]
This judicial disciplinary proceeding involves the conduct of a trial court judge who sentenced a felon to a term of imprisonment and later, after his parole, engaged in an extramarital affair with him. This intimate association with a convicted felon from her court became known in the community and was subsequently reported in a news article when it became an issue in the trial judge's divorce proceedings.
The recommendation of the Judiciary Commission of Louisiana to this Court is that Respondent, Judge Sharah Harris, formerly *1139 known as Sharah Mulmore,[1] be suspended for a period of sixty days without pay from the office of Judge of the 18 th Judicial District Court and ordered to reimburse the Judiciary Commission for the costs incurred in the investigation and prosecution of this case. The Judiciary Commission conducted an investigatory hearing, made findings of fact and law, and determined that Judge Harris violated Canons 1[2] and 2[3] of the Code of Judicial Conduct of 1976 and La. Const. art. V, § 25. Judge Harris acknowledged her wrongdoing in her hearing before the Judiciary Commission and concurred in its recommendation of discipline. After reviewing the record before us, we find that the charge against Judge Harris is supported by clear and convincing evidence, and that a 60-day suspension without pay is warranted.

FACTS
In lieu of a formal hearing, Judge Harris and the Special Counsel for the Judiciary Commission entered into a stipulation of fact. In its recommendation to this Court, the Judiciary Commission adopted a substantial part of these stipulated facts, as well as providing several additional facts determined through its investigation.
On October 30, 1992, Judge Harris assumed the office of judge for the Eighteenth Judicial District Court for the Parishes of Iberville, Pointe Coupee, and West Baton Rouge. Subsequently, on June 21, 1993, Judge Harris sentenced Rodney Jones to five years with the Louisiana Department of Corrections for armed robbery. Although La. R.S. 14:64 requires that imprisonment for armed robbery be served "without benefit of parole, probation or suspension of sentence," Judge Harris admitted to the Judiciary Commission that she erroneously imposed sentence without these restrictions. As advanced by Judge Harris, no one brought the sentencing error to her attention.[4]
Rodney Jones was released from prison on parole on December 19, 1994.[5] The following month, Jones contacted Judge Harris and shortly thereafter the two began a sixteen month extramarital intimate sexual relationship. During that relationship, telephone records establish that Judge Harris called or attempted to call Jones on at least 180 occasions. Sometime in March of 1996, the relationship between Judge Harris and Jones terminated. Although not stipulated to, the Judiciary Commission found that Judge Harris telephoned Jones after April of 1996 on relatively few occasions.
Thereafter, from May 17, 1996, through May 28, 1996, Jones violated his parole by allegedly engaging in a crime spree in East Baton Rouge Parish, including car theft, burglary of an inhabited dwelling, and armed robberies of two fast food outlets and a shoe store. On July 16, 1996, Jones admitted he was in violation of his parole, i.e., engaging in criminal conduct and possessing a firearm or dangerous weapon. Accordingly, on October 23, 1996, Jones was found guilty of violating his parole and, effective July 16, 1996, his parole was revoked. He is now serving the *1140 remainder of the five year sentence Judge Harris first imposed in 1993.[6]
Based upon the record before it, the Judiciary Commission made the following findings:
 The relationship between Judge Harris and Jones occurred during the time Jones was on parole from the five-year sentence Judge Harris imposed.
 From January 1995 through April 1996, Judge Harris associated, socialized and was intimately involved with a known convicted felon.
 Judge Harris' ex-husband, Wade Mulmore, persuaded Judge Harris to admit her relationship with Jones, and secretly recorded that admission. Thereafter, Mr. Mulmore disseminated a transcript of that recording to law enforcement officials.
 Judge Harris exhibited "genuine recognition of the inappropriateness of her actions with Rodney Jones," and the Commission believed she was sincere in expressing genuine remorse about her inappropriate and injudicious liaison and that similar conduct will not be repeated in the future.

LAW
This Court has original jurisdiction in judicial disciplinary proceedings. La. Const. Art. V, § 25(C). Therefore, this Court has the power to make original determinations of fact based upon the evidence in the record and is not bound by the findings and recommendations of the Judiciary Commission. The grounds for disciplinary action against a judge are set forth in La. Const. art. V, § 25(C), which provides:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.
Under our supervisory authority over all lower courts, this Court adopted the Code of Judicial Conduct, effective January 1, 1976. This Code of Judicial Conduct is binding on all judges, and violations of the Canons contained therein may serve as the basis for the disciplinary action provided for by La. Const. art. V, § 25(C). In re Decuir, 95-0056 (La.5/22/95), 654 So.2d 687. A violation of the Code of Judicial Conduct must be proven by clear and convincing evidence. In re Huckaby, 95-0041 (La.5/22/95), 656 So.2d 292.
In In re Johnson, 96-1866 (La.11/25/96), 683 So.2d 1196, we applied the clear and convincing standard of proof to a case where the judge and Special Counsel for the Judiciary Commission entered into a stipulation of facts which was later adopted, with the supporting exhibits, by the Judiciary Commission in its findings of fact and conclusions of law. There we stated:
Judge Johnson has admitted to all the facts necessary to determine whether he violated the Code of Judicial Conduct in the Statement of Uncontested Material Facts jointly submitted by all parties and accepted by the Commission ... Because Judge Johnson agreed to stipulations encapsulating the essence of ethical violations,... our inquiry as to Johnson's violations of these Canons is at an end. See Decuir, 95-0056 at p. 8, 654 So.2d at 692 (finding that because the parties stipulated to the relevant facts and the judge admitted that the facts establish violations of the Code of Judicial Conduct, the Court is "left only with the task of deciding the appropriate measure of discipline in this case.")
In re Johnson, 683 So.2d at 1200.
Applying this analysis to the present case, we find that since Judge Harris stipulated to all the facts needed to determine her violation of the Code of Judicial Conduct, *1141 admitted her wrongdoing, and consented to the recommended discipline, the Formal Charges have been proven by clear and convincing evidence.

DISCUSSION OF JUDICIAL CANONS
In the present case, the Judiciary Commission charged Judge Harris with engaging in an extramarital affair with a paroled felon who was released from prison on parole pursuant to a sentence that Judge Harris imposed.[7] As in all matters involving the judiciary, the Judicial Canons are paramount and provide the benchmark against which judicial conduct is judged. In that light, we will first examine the applicable canons to assess the charges leveled against Judge Harris.
Canon 1, entitled "A Judge Shall Uphold the Integrity and Independence of the Judiciary," provides:
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
Canon 2, entitled "A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities," provides, in pertinent part, as follows:
A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge shall not allow family, social, political, or other relationships to influence judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interest of others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness.
It is well recognized that the primary purpose of the Code of Judicial Conduct is to protect the public not to discipline a judge. In re Marullo, 96-2222 (La.4/8/97), 692 So.2d 1019. As ministers of justice charged with the duty to preserve the integrity of the bench for the benefit of the public, this State's judges should conduct themselves in a manner above reproach and suspicion. In re Huckaby, 95-0041 (La.5/22/95), 656 So.2d 292.
Canon 1 requires judges to observe "high standards of conduct," and Canon 2 requires judges to avoid not only actual impropriety, but also the appearance of impropriety. In In re Haggerty, 257 La. 1, 241 So.2d 469, 478 (La.1970), a case involving a judge's association with purported underworld characters, we stated that the judge's conduct, "[brought] disgrace and discredit upon his judicial office and a loss of public respect and confidence in his ability and temperament to perform his duties."
Although it is not illegal to associate with known criminals, when a judge, who has sworn to uphold the law, enters into an intimate relationship with a convicted felon whom she sentenced in her court, the public's perception of such a relationship causes disrespect for the judiciary and falls below the standard the public has a right to expect. Moreover, such conduct suggests improper influence, whether or not such exists. See In re Whitaker, 463 So.2d 1291, 1303 (La.1985)(a *1142 judge's intentional association with persons known for criminal activity is prejudicial to the administration of justice and brings discredit to the judicial office.)
In the present case, Judge Harris not only associated publicly with a known felon, she entered into a extramarital affair with a felon who pleaded guilty in her court and was sentenced by her for his criminal act. Additionally, as noted by the Judiciary Commission, this relationship became publicized in a lengthy article in the Baton Rouge Advocate which articulated the fact that Jones had been sentenced by Judge Harris for the felony he committed. Under these facts, it is clear that Judge Harris created an appearance of impropriety when she associated with a known felon whom she sentenced. Therefore, we find that she engaged in public conduct prejudicial to the administration of justice that brought her judicial office into disrepute, in violation of the Judicial Canons and La. Const. art. V, § 25.

DISCIPLINE
In In re Chaisson, 549 So.2d 259, 266 (La.1989), citing In Matter of Deming, 108 Wash.2d 82, 736 P.2d 639, 659 (1987), we adopted the following non-exclusive list of factors to consider in imposing discipline on a judge:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (I) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
In the case sub judice, the Judiciary Commission concluded that although Judge Harris violated Canons 1 and 2 of the Code of Judicial Conduct by associating with a known felon whom she sentenced, a finding to which Judge Harris consented, she nonetheless showed genuine remorse in her testimony before the commission and that she recognized her error. The Judiciary Commission further found it significant that Judge Harris did not know Jones prior to sentencing, that she did not begin her relationship with Jones until after he was released on parole, and that their relationship had significantly diminished by the time Jones initiated his crime spree in 1996.
Applying the Chaisson factors to the present case, we find that suspension for 60-days without pay, the Judiciary Commission's recommendation, is appropriate in this case.

DECREE
Accordingly, for the reasons stated above, it is ordered that Judge Sharah Harris be, and she is hereby suspended from judicial office without pay for 60-days for violating the Code of Judicial Conduct and the Louisiana Constitution. It is further ordered that Judge Sharah Harris reimburse the Louisiana Judiciary Commission $373.59, representing costs incurred during the investigation and prosecution of this case. Supreme Court Rule 23, § 22.
NOTES
[*] Traylor, J., not on panel. Rule IV, Part 2, § 3.
[1] In a judgment of divorce dated August 13, 1997, in the matter, Wade B. Mulmore versus Sharah Renea Mulmore of the Eighteenth Judicial District Court for the Parish of Iberville, Sharah Renea Mulmore chose to use her surname following the divorce. See La.Civ.Code art. 100. Accordingly, the judgment reflected that she chose to use Sharah Renea Harris instead of Sharah Renea Mulmore.
[2] Infra.
[3] Infra.
[4] There was no evidence presented to the Judiciary Commission that the sentencing involved any wrongdoing on the part of Judge Harris and thus, it is not an issue before us for consideration.
[5] There is no evidence in the record which would establish in any way that Judge Harris had any control over Jones' parole request or that she intervened on his behalf at anytime after she imposed sentence on him. Parole hearings are controlled by the Board of Parole appointed by the governor, La.R.S. 15:574.2(A)(1). Parole is granted only after a hearing is conducted and the prisoner is interviewed, La.R.S. 15:574(D)(1). Although communication with the Board of Parole is restricted to appearances in an open hearing by written letter addressed to the Board of Parole, there is no evidence in the record before us to show that Judge Harris had any communication with the Board of Parole.
[6] The record does not establish the disposition of the criminal charges filed against Jones for his May crime spree in East Baton Rouge Parish.
[7] We emphasize that in the case sub judice, we are not presented with a case involving a trial judge who exercised improper control over the treatment of a prisoner after imposition of sentence or one who intervened favorably on behalf of a prisoner in the parole process. Unlike probation which a trial court may impose, La.Code Crim.P. art. 893, a trial judge lacks authority under La.R.S. 574.2, et seq. to determine the grant or denial of parole, since that body of statutory law is directed to the Board of Parole. In the present case, it is clear that Judge Harris had no control over Jones during the parole process. If we were presented with a situation where Judge Harris would have exercised control, we would be faced with a more serious question requiring a correspondingly stiffer discipline. We likewise point out that we are not simply faced with a trial judge who engaged in an extramarital affair.