|,VICTORY, J. *
This is a disciplinary proceeding against Judge Leon L. Emanuel, III, First Judicial District Court, Parish of Caddo. The Judiciary Commission of Louisiana (the “Commission”) conducted a hearing, issued findings of fact and conclusions of law, and recommended public censure for violations of Canons 1, 2[1], 3 A(7), and 3 B(l)[2] of the *230 Code of Judicial Conduct and La. Const, art. V, § 25(C). After reviewing the | ¡.record before us, we conclude that the charges are supported by clear and convincing evidence, and that public censure is warranted.
FACTS AND PROCEDURAL HISTORY
Judge Emanuel was elected to the First Judicial District Court for the Parish of Caddo in 1992. The court is divided into three sections: civil, criminal, and domestic. In January 1994, Judge Emanuel began presiding over a civil docket. On March 14, 1996, Judge Scott Crichton lodged a complaint with the Commission alleging that Judge Emanuel worked “far less hours per week than what is required by law and is absent from his office a considerable part of each week” and that he deprived attorneys and parties of access to his court because he refused to set trial dates in accordance with the then-existing local court rule. Upon inquiry, it. was determined that the allegations were not frivolous, and a preliminary investigation was conducted to determine whether a hearing should be held on the question of discipline. Supreme Court Rule 23, § 3(a). After completion of the Commission’s investigation, formal charges were filed on June 2,1998.
On October 7, 1998, following completion of discovery, Judge Emanuel, his legal counsel, and the Special Counsel to the Commission submitted a “Statement of Stipulated Material Facts” (the “Stipulation”) in lieu of the Commission receiving testimony from witnesses at the formal hearing. The Stipulation contained the following reservations:
This stipulation with respect to the testimony of certain witnesses specified below means that if called to testify at a hearing before the Judiciary Commission those witnesses would testify as set forth in the Stipulation. However, Judge Leon L. Emanuel does not necessarily stipulate to the truthfulness of all of the testimony of each witness and may address and/or explain in his testimony at the hearing before the Commission the specific testimony of witnesses with which he either disagrees or disputes.
13Judge Emanuel testified at the hearing and the Commission also allowed the testimony of two additional witnesses on his behalf — his secretary and a local attorney.
After hearing the testimony and considering the Stipulation and the evidence filed in the record, on December 12, 1998, the Commission issued its Findings of Fact and Conclusions of Law, in which it adopted in substantial part as its Findings of Fact the Stipulation and further found additional facts. The formal charges and analogous findings and conclusions by the Commission were as follows: ■
FORMAL CHARGE 1(A)
The Commission charged that from January 1, 1994 through May 9, 1996, Judge Emanuel maintained a policy and practice of intentionally refusing to set status conferences or issue scheduling orders establishing discovery cut-off and trial dates. Because of persistent complaints from the bench and bar regarding this practice, the court amended its Local Rule 9, effective May 9, 1996, which mandates that upon request, a judge shall either set a status conference or issue a scheduling order.[3]
*231 |4The parties stipulated to the following facts. Judge Emanuel maintained a policy of not setting status conferences or issuing scheduling orders upon request. Instead, Judge Emanuel often instructed the attorneys to complete a status report in order to determine if setting a trial date or other deadlines was appropriate. If he believed a case had not progressed to the extent that deadlines or a trial date were appropriate, he would refuse to furnish such dates. If he believed the case was ready for a trial date, he generally gave each of the attorneys available trial dates by telephone. The record also shows that Judge Emanuel, compared with the other judges assigned to the civil bench of the First Judicial District Court, had the lowest number of cases assigned to his civil section, conducted court the least amount of days, and conducted the fewest number of jury trials.
The Stipulation also contained a summary of the sworn statements of four of the judges of the First Judicial District Court regarding Judge Emanuel’s policy. Judge Frank Thaxton testified he received complaints from lawyers that Judge Emanuel would not respond to their requests for status conferences, and he met with Judge Emanuel on two occasions to discuss this problem, but that Judge Emanuel was not receptive to his suggestions. He further testified that at a meeting in the fall of 14995 of the Liason Committee between the Bench and Bar, the discussion centered around complaints about Judge Emanuel’s policy of not conducting status conferences or setting trial dates. Minutes of the meeting were sent to Judge Emanuel, and when he did not respond, the judges felt it necessary to amend Rule 9. Judge Thaxton also testified that although the judges had planned to transfer cases to Judge Emanuel’s section to balance the distribution of cases, he did not do this because of the complaints from attorneys that Judge Emanuel would not schedule trials or hold status conferences.
Judge Crichton, who filed the initial complaint with the Commission, testified that at one judges’ meeting in mid-1995, he told Judge Emanuel directly, “You have got to set cases for trial. You have got to set status conferences or scheduling conferences; people are begging to get into your courtroom.” Judge Crichton also testified that he stopped transferring cases to Judge Emanuel’s section because of the lawyers’ complaints.
*232 Judge Charles Scott testified that he did not remember any specific complaints against Judge Emanuel but did remember judges’ meetings where Judge Emanuel was confronted about his failure to schedule conferences or set trial dates and that Rule 9 was “probably” amended because of Judge Emanuel’s practice.
Chief Judge Eugene Bryson testified that after he became aware of these problems in Judge Emanuel’s section, he met with Judge Emanuel to discuss this and also requested that retired Judge C.J. Bo-lin likewise meet with Judge Emanuel.
Judge Emanuel claims that there was only one meeting with certain judges on May 14, 1995, where his application of Rule 9 was discussed. He also acknowledges that he met with Judge Bolin, but not until September of 1996, after the complaint was filed. He further denied that Rule 9 was amended to correct his practice but | insisted that Rule 9 was amended as part of a long-term revision of the Rules “due to [his] urging and participation.”
The Commission made the following factual findings relative to Charge I:
Judge Emanuel’s (a) refusal to convene status conferences or to issue scheduling orders prior to May 31, 1996, and (b) refusal to sign many ex parte routine orders resulted in the .following:
a. the court as a whole eliminating use of a duty judge for routine matters;
b. the court calling for assistance from the local Bench and Bar organization, which formed a 15-20 person committee, to address the problem of pre-trial case management, including amending then-existing local rules;
c. the court completely eliminating one section of court that had been handling civil cases and reclassifying it as a criminal section so that Judge Emanuel could take a criminal docket;
d. making a change in the local court rule regarding pre-trial matters to make mandatory that a judge either conduct status conferences upon request or issue scheduling orders; and
e. before Judge Emanuel moved to criminal docket, Judges Crichton, Scott, and Thaxton assuming larger dockets rather than referring matters to Section F (Judge Emanuel’s section); the referral of every fourth matter to Section F had been agreed upon as a way to “beef up” Judge Emanuel’s section of court. The Commission concluded that Charge
1(A) was proven by clear and convincing evidence, stating that “of paramount concern to the Commission is the effect upon the public and public perception regarding Judge Emanuel’s case management. The public’s interest in having judicial matters resolved promptly should not suffer. If Judge Emanuel was unwilling to accept assistance from his judicial colleagues, he had an obligation to effectively resolve the problems that were apparent to many people in Caddo Parish in order to supervise cases assigned to him and to move them through the system in an expeditious manner.” Further, the Commission found that he failed to discharge his duty to move cases assigned to his |7section promptly or efficiently, all in violation of Canon 3 A(7) of the Code of Judicial Conduct (1976) and 1974 Const, art. V, § 25(C).
FORMAL CHARGE 1(B)
In Formal Charge 1(B), the Commission charged Judge Emanuel of denying litigants access to his court by intentionally refusing to set and convene status conferences or issue scheduling orders in five specific cases. The stipulation contained the following facts.
In Holman v. Taco Bell Corp., No. 396,-831, three requests for scheduling conferences to set trial dates were submitted to Judge Emanuel, dated May 3, 1995, December 15, 1995, and February 29, 1996, to which Judge Emanuel did not respond.[4] *233 By letter dated April 19, 1996, one attorney requested a status conference and stated that if he did not hear from Judge Emanuel, “on or before May 1, 1996, petitioners will assume that they are being denied access to state court and will file the appropriate suit in federal court to address this problem.” Subsequently, Judge Emanuel ordered a status conference on May 10, 1996, and on May 15 and 20, issued orders setting a jury trial on December 9, 1996. Judge Emanuel testified that he did not set a trial date earlier because based on the answers to the questionnaire, he did not believe the case was ready for trial.
The Commission found by clear and convincing evidence that Judge Emanuel’s conduct in this case was a breach of Canon 3 A(7) of the Code of Judicial Conduct (1976) ( “a failure to dispose promptly of the business of the court”) but did not review whether the litigants were denied access to Court in violation of 1974 La. Const, art. 1, § 22.
|sIn Green v. Podnuh’s BBQ, Inc., No. 398,791, a party submitted a request for a status conference on November 4, 1994. Judge Emanuel wrote a letter dated February 20, 1995, stating that “it is my practice to exercise the discretion of not scheduling status conferences in most cases.” Instead, Judge Emanuel requested the parties submit a Status Report Questionnaire. The parties complied, but no correspondence followed. One of the parties submitted a second letter dated December 12, 1995, requesting a trial date. On February 12, 1996, approximately 15 months after first requested, Judge Emanuel scheduled trial for May 29, 1996. Judge Emanuel testified that he did not issue a scheduling order or set a status conference when first requested because he did not believe the case was ready for trial.
The Commission found by clear and convincing evidence that Judge Emanuel’s conduct in this case was a breach of Canon 3 A(7) of the Code of Judicial Conduct (1976), but did not review whether the litigants were denied access to Court in violation of 1974 La. Const, art. 1, § 22.
In McFarland v. Plumley, No. 378,913, the parties requested status conferences by letters dated March 14, 1994, and May 3, 1994. Judge Emanuel responded by letter dated September 12, 1994, advising the lawyers of his policy of not setting status conferences and presented three available dates for trial, about which the parties were to confer and agree. Because the dates conflicted with counsels’ schedules, Judge Emanuel submitted four additional dates. On October 21, 1994, counsel advised Judge Emanuel that these dates also conflicted with counsels’ schedules, but they received no response. Subsequently, on May 19, September 16, and October 10, 1996, the attorneys wrote to Judge Emanuel requesting a status conference. In response to the October 10, 1996, letter, Judge Emanuel provided additional trial dates and a trial date of May 29, 1997, was selected. Judge Emanuel1 ^testified that he took so long to respond to the initial status conference requests because he had just assumed the bench and offered in defense that, to date, no trial has been held.
The Commission found by clear and convincing evidence that Judge Emanuel’s conduct in this case was a breach of Canon 3 A(7) of the Code of Judicial Conduct (1976), but did not review whether the litigants were denied access to Court in violation of 1974 La. Const, art. 1, § 22.
In Hyo Su Kim Nation v. Sport City, Inc., 392,473, a party requested a status conference on September 7,1994. On January 25, 1995, Judge Emanuel responded that he did not generally hold status conferences and sent the parties a questionnaire. On February 3, 1995, the parties completed the questionnaire but received no response. The parties submitted three more letters on May 14, June 12, and September 19, 1996, requesting a status conference. In response to the last letter, Judge Emanuel provided available trial *234 dates, but no date was ever established during the time the case was assigned to Judge Emanuel’s section. Judge Emanuel testified that this case was a very old case and that the lawyers did not need a status conference, they needed a trial date. He also testified that some of the requests did not comply with Rule 9 because they were not filed in the record.
The Commission found by clear and convincing evidence that Judge Emanuel’s conduct in this case was a breach of Canon 3 A(7) of the Code of Judicial Conduct (1976).
In Fulguim v. James Harrals Fitness World, Inc., No. 391,077, on April 4, 1994, a party requested a status conference. On September 12, 1994, Judge Emanuel responded that he does not generally hold status conferences but instead offered available trial dates. Because the dates conflicted with the attorneys’ schedules, | mJudge Emanuel offered additional dates on October 15, 1994. After the attorneys advised him by letter that these dates also conflicted, they received no response from Judge Emanuel.
The Commission found by clear and convincing evidence that Judge Emanuel’s conduct in this case was a breach of Canon 3 A(7) of the Code of Judicial Conduct (1976).,
FORMAL CHARGE 1(C)
In Formal Charge 1(C), Judge Emanuel is charged with failing and/or refusing to timely sign ex parte orders while serving as Civil Order Signing Judge. As a result, lawyers practicing before the First Judicial District Court were regularly submitting pleadings that required the signature of routine ex parte orders either a week before or a week after Judge Emanuel’s assignment to sit as Civil Order Signing Judge, thereby increasing the workload of the other judges. Accordingly, the First Judicial District Court amended Local Rules 2, Sections 2 and 3, Section 4, effective August 15, 1996, eliminating the “no assignment” of matters which do not require action in open court, such as minor’s settlements, tutorships, worker’s compensation settlements, executory proceedings, successions and probate matters; and further eliminating the Civil Order Signing Judge duty assignments. As a direct result, all such routine matters must now be submitted to assigned sections of court for signing. The Stipulation acknowledged that if called to testify, certain lawyers and judges would testify accordingly.
The Commission found that this charge was proven by clear and convincing evidence, constituting violations of Canons 1, 2 A and 3 A(7)(1976) and 1974 La. Const, art. V, § 25(C).
INFORMAL CHARGE 1(D)
In Formal Charge 1(D), the Commission charged that Judge Emanuel’s refusal to timely sign routine ex parte orders denied litigants access to his court in three cases. In Bank One, Louisiana, N.A. v. Unopened Succession of Ilene Stevenson, No. 417,546(F), Judge Emanuel failed and/or refused to confirm a default judgment where a curator had failed to file an answer. After the curator filed an answer, Premier Bank filed a motion for summary judgment and Premier Bank’s attorney claimed that Judge Emanuel did not set the motion for hearing despite several calls to his office. Subsequently, the case was reassigned to another section. Judge Emanuel testified that he was never presented with this case.
In Cassibry v. Jimerson, No. 419,202(F), plaintiffs counsel claims he and his partner called and visited Judge Emanuel’s office several times to get him to sign an ex parte order in an executory process suit. Approximately three weeks after the order was submitted, Judge Emanuel made arrangements for another judge to sign the order because he was out of town. Judge Emanuel denied that the attorneys called or visited his office and claimed that he was at a judicial conference when the other judge signed the order.
*235 In Ford Motor Credit Company v. Roberts, No. 411,910, on December 15, 1995, the creditor submitted a request for a writ of seizure alleging that the debtor was two payments. On December 21, 1995, Judge Emanuel refused to sign the order based on his belief that it was unfair because the debtor was only two months in arrears but advised the lawyer that another judge could sign the order. Judge Scott signed the order on December 27,1995.
The Commission found that this charge was proven by clear and convincing evidence to the extent that Judge Emanuel failed and/or refused as the civil order |1gsigning judge to timely sign routine ex parte orders in the above cases, constituting violations of Canons 1, 2 A, and 3 A(7) and constituting willful or persistent failure to perform judicial duties, equating to willful misconduct relating to the judge’s official duty, under 1974 La. Const, art. V, § 25(C).
FORMAL CHARGE II
The Commission charged Judge Emanuel in Charge II of failing to render, issue, and sign a judgment in a timely manner in Patterson v. City of Shreveport, No. 374,612. Judge Emanuel stipulated that a post-trial briefing schedule was established wherein the plaintiffs brief was due January 8,1996, defendant’s brief was due February 5, 1996, and the plaintiffs rebuttal brief was due February 12, 1996. Counsel for both parties requested extensions of time, which were granted, and the last brief was filed on March 22, 1996. A judgment was not rendered by Judge Emanuel until June 5,1997.
The Commission concluded that such conduct is sanctionable as a violation of Canons 3 A(7) and 3 B(l) and further evidences willful failure to perform judicial duties, and willful misconduct relating to his official duty, all in breach of 1974 La. Const, art. Y, § 25(C).
FORMAL CHARGE III
The Commission alleged in Charge III that Judge Emanuel failed to accurately report to the Judicial Administrator of the Supreme Court that the Patterson case was under advisement. Judge Emanuel stipulated that he failed to report the case as under advisement until his report of August of 1996. However, he testified that the reason he did not report the case until August of 1996 was because he thought a party was filing a rebuttal brief and when he found out that the party was not, he sent the parties a letter stating that the case would be considered as submitted as of June, 1996. He 113argues that, therefore, the case was not under advisement for over 30 days until the August 1996 report, and that in any event this was only a “technical” violation.
The Commission concluded that Judge Emanuel’s failure to report the Patterson case was a violation of Canons 3 A(7) and 3 B(l).
FORMAL CHARGE IV
The Commission charged in Charge IV that Judge Emanuel failed to timely render, sign, and issue a judgment in the case of Whitman v. Young, No. 375,044. Judge Emanuel stipulated that the case was submitted after a trial on June 5, 1996, but that a judgment was not rendered until July 1, 1997. Judge Emanuel claims that the delay was caused by his review of medical reports in this personal injury case.
The Commission concluded that this delay constituted sanctionable conduct in violation of Canons 3 A(7) and 3 B(l) and constituted a willful failure to perform his judicial duties, in violation of the 1974 La. Const, art. V, § 25(C).
RECOMMENDATION FOR DISCIPLINE
After considering the factors listed in In re Chaisson, 549 So.2d 259, 266 (La.1989),[5] *236 the Commission recommended that Judge Emanuel be censured for his conduct and that he reimburse and pay the Commission the costs incurred in the amount of $4,582.99, pursuant to Supreme Court Rule XXIII, Section 22.
| ^DISCUSSION
This court has original jurisdiction in judicial disciplinary proceedings. La. Const, art. V, Sec. 25(C). Accordingly, we have the power to make original determinations of fact based upon the evidence presented and are not bound by the findings and recommendations made by the Commission. The grounds for disciplinary action against a judge are set forth in Louisiana Const, art. Y, § 25(C), which provides, in pertinent part:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.
In addition to these constitutional grounds, this Court, under its supervisory authority over all lower courts, adopted the Code of Judicial Conduct, effective January 1, 1976. This Code is binding on all judges, and violations of the Canons set forth therein may serve as a basis for the disciplinary action provided for by La. Const, art. V, § 25(C). In re Decuir, 95-0056 (La.5/22/95), 654 So.2d 687, 692.
The standard of proof in judicial discipline cases is the clear and convincing standard. In re Johnson, 96-1866 (La.11/25/96), 683 So.2d 1196, 1199. This standard requires that the level of proof supporting the Commission’s factual findings must be more than a mere preponderance of the evidence but less than beyond a reasonable doubt. Id.

Failure to issue scheduling orders or conduct status conferences

Canon 3 A(7) of the Code of Judicial Conduct requires a judge to dispose promptly of the business of the court. Judge Emanuel’s admitted policy and practice of not holding status conferences and of refusing to issue scheduling orders setting | ^discovery deadlines and trial dates unless he felt that the case was ready for trial based on the attorneys’ answers to his questionnaire violated Canon 3 A(7). Although Local Rule 9, before its amendment, did not require a judge to hold status conferences or issue scheduling orders, Judge Emanuel was required under Canon 3 A(7) to promptly dispose of the court’s business and there is no evidence that the alternative procedures he employed achieved this requirement. Indeed, the evidence shows that his use of questionnaires actually slowed down the pre-trial process. As found by the Commission, “the setting of a trial date, which takes a few minutes at a conference, took at the minimum, days and more often weeks and months.” Further, a status conference is often needed, not just to set a trial date, but to enable the judge to possibly remove impediments to the progress of the litigation. Judge Emanuel’s absolute failure to recognize this resulted in a breach of Canon 3 A(7). In addition, in the five cases cited by the Commission, *237 after an attorney requested a conference or a scheduling order, Judge Emanuel would not respond to the request for months. When he finally did respond, often after the third or fourth request, he would either send out a questionnaire or offer specific trial dates, about which the attorneys would have to reach an agreement. If the dates were not available for counsel, the process would start again.
The record supports the other First Judicial District Court judges’ accounts of complaints from members of the bar and of their efforts to persuade Judge Emanuel to improve his pre-trial management procedures. The record also supports the allegation that the First Judicial District Court amended Rule 9 because Judge Emanuel would not follow their suggestions that he either hold status conferences or issue scheduling orders.
J^gBased on the evidence presented, the Commission has proven by clear and convincing evidence that Judge Emanuel’s pre-trial management procedures of refusing to issue scheduling orders or conduct status conferences, and of failing to promptly respond to requests for such, violated his duty under Canon 3 A(7) to promptly dispose of the business of his court.

Failure to sign routine orders as duty judge

The record supports the Commission’s finding that members of the bar would present their routine ex parte orders to the First Judicial District Court either the week before or the week after Judge Emanuel was sitting as duty judge because Judge Emanuel delayed or refused to sign routine ex parte orders. This practice resulted in the other judges assuming a greater workload when they were assigned as duty judge. Further, the First Judicial District Court amended Local Rules 2, Sections 2, 3 and 4, eliminating the “no assignment” of matters which do not require action in open court and further eliminating the Civil Order Signing Judge duty assignments.
The Commission additionally presented three cases where Judge Emanuel either refused to sign, or delayed in signing, routine ex parte orders. In Bank One, counsel claimed that Judge Emanuel failed and/or refused to confirm a default judgment where a curator had failed to file an answer. After the curator filed an answer, Premier Bank filed a motion for summary judgment and Premier Bank’s attorney claimed that Judge Emanuel did not set the motion for hearing despite several calls to his office. Subsequently, the case was reassigned to another section.
In Ford Motor Credit, Judge Emanuel refused to sign a writ of seizure in an executory process suit because he believed it was unfair to seize the property where the debtor was only two months in arrears. Subsequently, another judge signed the order.
|17In Cassibry, Judge Emanuel’s office was presented with an ex parte order in connection with a motorcycle seizure on November 8, 1996, but despite numerous calls and visits to his office, and assurances from his secretary that he would sign the order, counsel was. unable to get him to sign the order. Finally, on November 21, 1996, Judge Emanuel arranged for another judge to sign the order while he was away at a judicial conference.
Judge Emanuel’s decision not to sign the order in Ford Motor Credit amounts to judicial misconduct under In re Quirk, where we held that “a judge may be found to have violated La. Const, art. V, Sec. 25 by a legal ruling or action made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error.” In re Quirk, 97-1143 (La.12/12/97), 705 So.2d 172, 181. In Ford Motor Credit, Judge Emanuel has offered no valid explanation for refusing to sign the order other than his personal view that he thought the seizure was unfair. This is *238 another example of Judge Emanuel making other judges do his work for him.
There is clear and convincing evidence that Judge Emanuel’s failure to act in the Cassibry and Bank One cases caused some delay. There is also clear and convincing evidence that there was a perception among members of the bar that Judge Emanuel was not the judge to go to if a routine ex parte order needed signing and this may have caused extra work for the other judges. Based on the evidence presented, Judge Emanuel violated Canon 3 A(7) by failing to sign these routine orders.
| ^Failure to timely render, issue and sign judgments in a timely manner and failure to report a case as under advisement
In addition to the requirement of Canon 3 A(7), La. R.S. 13:4207 contains specific timeliness requirements relative to cases under advisement. La. R.S. 13:4207 provides in pertinent part: “The district judges and the judges of the' city courts, shall render judgments in all cases under advisement by them, within thirty days from the time the cases are submitted for their decision.” Supreme Court Rule General Administrative Rule G, § 2 provides in pertinent part:
(a) When. submitted.. A case or other matter shall be considered as fully submitted for decision to the trial judge, and should be decided, immediately upon the conclusion of trial' or hearing, and judgment signed expeditiously thereafter.
If the court, in an exceptional case, orders post-trial or post-hearing briefs, or orders the transcript prepared, plaintiff shall be allowed a maximum of twenty days within which to file a brief; defendant shall be allowed a maximum of twenty days from the filing or lapse of time for filing plaintiffs brief (whichever occurs sooner) within which to file a brief. If the defendant timely files a brief, plaintiff shall be allowed a maximum of ten days to file a rebuttal brief. When briefs are so ordered, the case or matter shall be considered fully submitted on the day following the day of the latest timely filing of a brief or, at the latest, the day following the last day for filing of briefs. The judge may extend the time for filing a brief for a reasonable period not to exceed the original time granted.
(b) Reports. Each judge of a district, juvenile, family, parish, city municipal or traffic court shall report to this court, through the office of Judicial Administrator, on or before the tenth day of each month, all cases which have been fully submitted and under advisement for longer than thirty days, together with an explanation of the reasons for any delay and an expected date of decision.
The Commission found, relative to Formal Charges II and IV, that Judge Emanuel failed to timely render, issue and sign judgments in two cases, Patterson v. City of Shreveport and Whitman v. Young. Judge Emanuel stipulated that in Patterson, involving liability in a road defect case, a trial was concluded on December 5, 1995; the last post-trial brief was filed on March 22, 1996, and the judgment was not rendered until June 5, 1997. Judge Emanuel stipulated that in Whitman, the case was submitted on June 5, 1996, and judgment was not rendered until July 1, 1997. He claims that this personal injury case involved lengthy medical reports.
In Formal Charge III, Judge Emanuel stipulated that he did not report the Patterson case as under advisement until his August 1996 report. However, he claims that he thought the parties were filing additional briefs and when he found out in April of 1996 that they were' not, he sent counsel a letter in June of 1996 informing them that the case would now be considered as submitted, and thus, the 30-day reporting period was not triggered until the August 1996 report.
*239 We held that decisional delays amount to sanctionable misconduct in In re Tuck, 96-1444 (La.11/25/96), 683 So.2d 1214. Judge Tuck was charged with decisional delays in two cases and failing to report the two cases as under advisement. One case was under advisement for two years before the judge rendered a judgment, which he never reported as under submission, because the judge “inadvertently neglected the case.” In the other case which Judge Tuck also failed to report, the judge allowed the parties to submit briefs long after the period allowed by Supreme Court Rule G, General Administrative Rules, § 2, and the plaintiff died while the case was still under advisement.
In Tuck, we held that although the case involved only a small number of delayed decisions, but particularly long delays, Judge Tuck’s conduct amounted to a violation for which the minimum sanction was warranted. Id. We noted that the | ^delay in the case which Judge Tuck inadvertently neglected did not amount to sanctiona-ble misconduct. However, in the other case, while Judge Tuck did not have any dishonest motive, he did allow the lawyers to abuse the decision-making process by allowing them numerous extensions in which to file briefs. We held that “deci-sional delay is a prevalent problem in the litigation arena, and the judge, especially at the trial level, must accept the responsibility of requiring lawyers to meet briefing schedules by refusing unjustified extensions or by simply deciding the case.” Id. While noting that the delays alone might not constitute sanctionable misconduct, his failure to report accurately that the cases were under advisement increased the violation to the level of sanctionable misconduct. Id.
The facts in the case at bar are similar. There are only two cases of decisional delay charged by the Commission, each involving delays of approximately one year. We find these delays to be indefensible in that they were due to Judge Emanuel’s own inefficiency or neglect. Likewise, Judge Emanuel failed to report one case as under advisement. Although the last brief was filed on March 22, 1996, Judge Emanuel did not report the case as under advisement. He claimed that he thought the parties were filing additional briefs, and in his answer, alleged that he discovered they were not filing additional briefs in April of 1996. Further, he alleges that the case was not under submission until June of 1996 when he sent the attorneys a letter stating that the case was now considered submitted.
We do not agree. Supreme Court Rule G, General Administrative Rules, § 2 requires that a matter is considered fully submitted on the day following the day of the last timely filing of a brief and sets limits on the allowable length of an extension of time to file a brief. After extensions were granted, the last brief was filed on March 22, 1996. The matter was fully submitted on that date, or, arguably, at the | R1latest, in April when Judge Emanuel discovered that the parties would be filing no more briefs. Thus, the matter should have absolutely been reported in the June and July of 1996 reports as required by Supreme Court Rule G, General Administrative Rules, § 2(b). Judge Emanuel did not report the matter until August of 1996.
Judge Emanuel’s one-year delays in deciding the Patterson and Whitman cases, and his failure to report the Patterson case as under advisement constitute sanctiona-ble misconduct violative of Canons 3 A(7) and 3 B(l). See In re Judge Paul R. Wimbish, 98-O-2882 (La.4/13/99), — So.2d -, 1999 WL 213076 (handed down by this Court today in which we publicly censured Judge Wimbish for decisional delays and failure to report cases under advisement).
We conclude from the overall record that Judge Emanuel’s conduct violated Canons 3 A(7) and 3 B(l) of the Code of Judicial Conduct, as well as Supreme Court Rule G, General Administrative Rules, § 2(b), and constituted willful misconduct relating to his official duty, willful *240 and persistent failure to perform his duty, and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, all in violation of La. Const, art. V, § 25(C). Sanction
The Commission recommended the minimum sanction of public censure. Given this court’s holding in In re Decuir, supra, our finding of sanctionable conduct mandates the imposition of at least the minimum sanction of a public censure, which we find to be the appropriate sanction in this case.
DECREE
For the reasons stated herein, it is ordered that Judge Leon L. Emanuel be, and he hereby is, publicly censured for violating the Code of Judicial Conduct and La. Const, art. V, § 25(C). It is further ordered that Judge Leon .L. Emanuel reimburse the | ¡^Louisiana Judiciary Commission $4,582.99, representing costs incurred during the investigation and prosecution of the case. Supreme Court Rule 23, § 22.

 Kimball, X, not on panel. Rule IV, Part 2, § 3.

. At the time of the charge offenses, Canon 2 A read as follows: A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities — A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

. At the time of the charged offenses, Canon 3 read as follows in pertinent part:
A Judge Shall Perform the Duties of Office Impartially and Diligently.
The judicial duties of a judge shall take precedence over all other activities. Judi *230 cial duties include all the duties of office prescribed by law. In the performance of these duties, the following standards apply: A. Adjudicative Responsibilities
(7) A judge should dispose promptly of the business of the court.
B. Administrative Responsibilities
(1) A judge should diligently discharge administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.

. Rule 9. Status Conferences
Section I. As soon as service is effected on all parties, Counsel should attempt to agree *231 upon deadlines to be inserted in a proposed scheduling order (Appendix A). If the parties are unable to agree upon scheduling deadlines within 60 days after all parties have been served, any party may request a status conference with the assigned judge. At his discretion, the assigned judge may:
(a) Direct all parties to submit their proposed deadlines in writing to the assigned judge for purpose of completing the scheduling order;
(b) Schedule a status conference for the purpose of setting such deadlines as he deems appropriate, including a trial date. On April 26, 1996, and effective on May 12,
1996, First Judicial District Court Local Rule 9 was amended as follows:
Amended Rule 9. Trial Settings — Scheduling/Status Conferences
Section 1. After all parties have answered, made a general appearance, or had a preliminary default entered against them, any party or Counsel may request in writing a scheduling/status conference with the assigned judge. The original and one copy of the request shall be delivered to the Clerk of Court. The Clerk shall ascertain the correct assignment of the case and shall file the original in the suit record and stamp “filed” on the copy and routé the copy to the assigned judge. Within thirty (30) days following receipt of a request for a scheduling conference, the assigned judge shall: a. Schedule a conference for the purpose of setting such deadlines as the judge deems appropriate, and the judge shall issue a scheduling order (See App. A) which shall include a trial date; or
b. Issue a scheduling order which shall include a trial date, which trial date shall be no earlier than 60 days following issuance of the scheduling order and shall be not later than 180 days following the issuance of the scheduling order. See App. A. Amended Local Rule 9 has been recodified
as Local Rule 10, as further amended in November of 1996.

. The first of these requests did not comply with Rule 9 because it was not served on all parties.

. The Chaisson factors are:
(a) Whether the misconduct is an isolated instance or evidenced a pattern of conduct;
(b) the nature, extent and frequency of occurrence of the acts of misconduct;
*236 (c) whether the misconduct occurred in or out of the courtroom;
(d) whether the misconduct occurred in the judge’s official capacity or in his private life;
(e) whether the judge has acknowledged or recognized that the acts occurred;
(f) whether the judge had evidenced an effort to change or modify his conduct; (g) the length of service on the bench;
(h) whether there have been prior complaints about this judge;
(i) the effect the misconduct has upon the integrity of and respect for the judiciary; and
(j) the extent to which the judge exploited his position to satisfy his personal desires.