683 So.2d 1214 (1996)
In re Judge Roy TUCK, Jr.
No. 96-O-1444.
Supreme Court of Louisiana.
November 25, 1996.
Nancy C. Chachere, Steven Robert Scheckman, Hugh M. Collins, New Orleans, for Applicant.
Roy B. Tuck, Jr., Leesville, Richard V. Burnes, Alexandria, for Respondent.

JUDICIAL DISCIPLINARY PROCEEDING
LEMMON, Justice.[*]
This is a disciplinary proceeding against a Louisiana judge. The proceeding is based on two separate complaints to the Judiciary Commission about respondent's delays in deciding cases and failure to report undecided cases as required by statutes and Supreme Court Rule.[1]

*1215 I.
At issue are Canons 3 A(7) and 3 B(1) of the Code of Judicial Conduct, which at the time of the charged offenses read as follows:

CANON 3
A Judge Shall Perform the Duties of Office Impartially and Diligently.
The judicial duties of a judge shall take precedence over all other activities. Judicial duties include all the duties of office prescribed by law. In the performance of these duties, the following standards apply:
A. Adjudicative Responsibilities
. . . . .
(7) A judge should dispose promptly of the business of the court.
. . . . .
B. Administrative Responsibilities
(1) A judge should diligently discharge administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.[2]
Other statutes and rules are also pertinent. La.Rev.Stat. 13:4207 generally requires judges to decide cases within thirty days of submission as follows:
The district court judges and the judges of the city courts, shall render judgments in all cases under advisement by them, within thirty days from the time the cases are submitted for their decision. All motions or applications for a new trial shall be passed upon by these judges within seven days from the time such motions or applications for a new trial are submitted to them for their decision; but by the written consent of the attorneys representing both sides, filed in the records or spread upon the minutes, the time herein granted may be extended for a further period of ten days, but no longer. (emphasis added).
La. Sup.Ct. R. G, § 2 further requires reporting of cases under submission for more than thirty days, as follows:
(a) When Submitted. A case or other matter shall be considered as fully submitted for decision to the trial judge, and should be decided, immediately upon the conclusion of trial or hearing, and judgment signed expeditiously thereafter.
In an exceptional case when the record has been left open upon the conclusion of trial or hearing for the filing of testimony by deposition and/or documents, such depositions and/or documents shall be filed within fifteen days and the case or matter shall be considered as fully submitted, and should be decided, immediately after such filing or the lapse of fifteen days, whichever occurs sooner.
If the court, in an exceptional case, orders post-trial or post-hearing briefs, or orders the transcript prepared, plaintiff shall be allowed a maximum of twenty days within which to file a brief; defendant shall be allowed a maximum of twenty days from the filing or lapse of time for filing plaintiff's brief (whichever occurs sooner) within which to file a brief. If the defendant timely files a brief, plaintiff shall be allowed a maximum of ten days to file a rebuttal brief. When briefs are so ordered, the case or matter shall be considered fully submitted on the day following the day of the latest timely filing of a brief or, at the latest, the day following the last day for filing of briefs. The judge may extend the time for filing a brief for a reasonable period not to exceed the original time granted.
If a transcript of the evidence, in an exceptional case, is deemed essential and is ordered by the court, it shall be filed within thirty days following the conclusion of *1216 trial or hearing. When necessary, for good cause shown, one extension may be granted by the judge not to exceed an additional fifteen days for filing of the transcript.
(b) Reports. Each judge of a district, juvenile, family, parish, city municipal or traffic court shall report to this court, through the office of Judicial Administrator, on or before the tenth day of each month, all cases which have been fully submitted and under advisement for longer than thirty days, together with an explanation of the reasons for any delay and an expected date of decision. (emphasis added).

II.
The two cases involved in this proceeding are the Canady case and the Aites case, neither of which was ever reported as being under advisement.[3]
The Canady case, a workers' compensation claim arising out of a work related heart attack, was tried in April 1990. Respondent granted the attorney successive twenty-day periods for briefing, and they substantially complied with the briefing schedule.
In January 1992, the plaintiff's attorney wrote to the Judicial Administrator requesting respondent's monthly reports of cases under advisement for over thirty days. The letter was not in complaint form, but was in the form of a request for the reasons given in respondent's monthly reports for the delay of almost two years in deciding the case. The attorney further stated that he had several conversations with respondent about the matter.[4] Upon receiving a copy of that letter, respondent promptly decided the matter.
Although the letter was in an innovative request format, the Judicial Administrator treated the letter as a complaint, and the Commission conducted an investigation into respondent's failure to report this case during the twenty-one-month period. Replying to the investigation inquiries, respondent stated that "[a]lthough I could offer a number of excuses such as a busy docket, some personal illness and other things, the delay and failure to report the delay is attributable to my own inadvertence."
After the investigation, the Commission decided to close the file. Nonetheless, the Commission in a June 1992 letter admonished respondent that the failure to report cases under advisement accurately is a very serious matter and that closed matters may be reopened and relied on in subsequent cases. See In re: Soileau, 502 So.2d 1083 (La.1987).
The Aites case, involving a 1984 motorcycle collision with a guy wire on an electric utility pole alongside a highway, had been tried in February 1989 and was still pending when the Commission issued its June 1992 letter in the Canady case. The Commission was unaware of the Aites case when it issued the admonition.
The plaintiff in the Aites case, a quadriplegic, died in September 1994 with the case still undecided. In January 1995, the plaintiff's mother wrote to the Judicial Administrator about respondent's delay in deciding the case. As in the Canady case, respondent decided the Aites case shortly after receiving a copy of the complaint.
After an investigation, the Commission issued four charges against respondent relative to the delays in the two cases and the failure to report the cases under advisement.
At the hearing before the Commission, one of the plaintiff's attorneys in the Aites case testified that he compromised the claim against the electric company and concluded the liability portion of the bifurcated trial against the Department of Transportation and Development on February 8, 1989. However, neither side abided by the briefing schedule fixed by respondent. According to the attorney, the case was extraordinarily complex, and the delays resulted from "informal verbal request[s]" for additional briefing made by the attorneys on both sides and *1217 granted by respondent. The attorney testified that although co-counsel suggested reporting respondent's delay in deciding the case to the Commission, he believed such action would have been inappropriate because it would have been inconsistent to ask the trial judge for additional briefing time and at the same time report the judge for granting it. Moreover, the attorney was hoping that favorable case law would develop on the issue of liability, which he described as an "uphill battle."
Respondent, the only other witness, testified that he became a district judge in November 1979. He admitted the factual allegations of the charges, but pointed out extenuating circumstances.
Addressing the Canady case, respondent testified that the central issue of heart attacks in a workers' compensation context had generated "considerable flux" in the law at the time. When the trial concluded in April 1990, he had medical depositions to read. Although the parties complied fairly closely with the briefing schedule, the record in the matter was returned to the clerk's office, and he simply forgot about it until he received a copy of the attorney's letter. The sole reason for the delay, in respondent's own words, was that the case simply "slipped by" him and he "inadvertently neglected the case."
In the Aites case, the briefs of the parties were not filed until nine and thirteen months, respectively, after trial. Thereafter, the parties from time to time informally requested permission to present additional authorities, and there were several filings as late as April 1994. After the plaintiff's death in September 1994, there was a delay in the issuance of the death certificate, and proper parties were eventually substituted. Respondent's "most terrible error," as he characterized it, was in "accommodating counsel in that fashion."
When questioned about his failure to report these two matters as under advisement, respondent answered that he failed to report the Canady case for the same reason that he failed to decide itthe case simply "slipped his mind." As to the Aites case, he stated that he did not consider the matter as being submitted since he had continued to grant, albeit informally, extensions of time to counsel to file supplemental authorities. However, he did not challenge the rule which considers cases fully submitted and subject to the reporting requirement upon the expiration of the time granting for filing briefs.
Respondent further testified that he generally decides cases from the bench at the conclusion of the matter or as quickly as possible thereafter to minimize the number of cases taken under advisement. Prompted by this disciplinary proceeding, he now retains the clerk's record when a case is taken under advisement, a practice he did not formerly utilize. His secretary also keeps a running list of such matters.
Respondent expressed extreme remorse and emphasized that these two cases were not characteristic of his judicial practice.

III
Conceding that the delays in these two cases were not justified, respondent contends that any violation under these circumstances does not warrant disciplinary sanctions. On the other hand, special counsel for the Commission argues that while this proceeding involves only two cases of judicial delay, the following aggravating factors warrant imposing sanctions: (1) a prior offense, the Canady case; (2) a prior warning issued in June 1992 in the Canady case; (3) the Aites case was pending three years before the 1992 warning and remained pending for three years after the warning was issued; (4) the extensive delay in Aites resulted from respondent's informal granting of verbal requests for extensions of time to submit new authorities; (5) the unreasonable length of the delay in Aites; (6) the fact that respondent was continually reminded by counsel's requests for extensions in the Aites case; and (7) the death of the plaintiff in Aites before a judgment was rendered in his case.
Given respondent's acknowledgement of the delays and the lack of justification for them, the critical question is whether these failings rise to the level of sanctionable judicial misconduct. To resolve that question, we first review the general concept of disciplinary sanctions for decisional delays and reporting failures.
*1218 Sanctionable misconduct includes persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. La. Const. art. V, § 25(C); In re: Soileau, 502 So.2d 1083 (La.1987). The sanctions that the Commission may recommend range from, at a maximum, removal from office to, at a minimum, a public censure. La. Const. art. V, § 25; In re: Decuir, 95-0056 (La.5/22/95), 654 So.2d 687.
The Commission's authority to address the problem of decisional delayholding cases under advisement for an extended period of timeis an important, yet little known, responsibility. Ben F. Overton, Grounds for Judicial Discipline in the Context of Judicial Disciplinary Commissions, 54 Chi.-Kent L.Rev. 59, 65 (1977). By correcting such deficiencies in the system, the Commission functions to improve the administrative operation of the judiciary. Moreover, because lawyers frequently are the dilatory ones and tend, in explaining to their clients, to blame judges for the delay, it is important for judges in most cases to abide by the time standards guidelines, especially in the trial court where the court's primary function is finding facts and applying the applicable law, and not one of making weighty pronouncements of law binding throughout the circuit.
The problem of decisional delay is complex because of the myriad of potential causes. Some decisional delays are defensible, resulting from causes beyond the judge's control such as excessive caseload, insufficient numbers of sitting judges or staff, structural inefficiency inherent in the judicial system, and case complexity. Charles Gardner Geyh, Adverse Publicity as a Means of Reducing Judicial Decision-Making Delay: Periodic Disclosure of Pending Motions, Bench Trials and Cases Under the Civil Justice Reform Act, 41 Clev. St. L.Rev. 511, 514-17 (1993). Other delays are indefensible, including nonstructural inefficiency (i.e., delay attributable to a judge's own inefficiency), belligerence or spite, disability or infirmity, and sloth or neglect. Id. Establishing that decisional delay in a particular case is the result of neglect generally is done indirectly by way of elimination: "if the judge's cases are neither too numerous nor complex, and delays can not be ascribed to structural or non-structural inefficiency, belligerence or disability, the inescapable conclusion may be that the judge is not working hard enough." Id. at 519-20. Only indefensible delay constitutes judicial misconduct. Id. at 520 (noting that "[e]xcessive, unjustified delay is, by definition, prejudicial to the `expeditious' administration of the courts' business").
Judicial conduct commissions generally resolve the problem of delayed decision making by informal discussions between the commission staff and the judge, or, when justified, by issuing an internal admonition or letter of warning, as was done in the Canady case in the present proceeding. In more extreme cases, the commission may recommend that the judge be sanctioned.
Decisional delays thus have been considered by the courts on a case-by-case basis. In deciding whether to and how to sanction decisional delay, the courts have considered several factors, including (1) the amount of delay from the date the case was ripe for decision; (2) the complexity of the case; (3) the administrative and judicial workload of the judge; (4) the number of special assignments given to the judge; (5) the amount of vacation time taken; and (6) other complaints involving delayed decisions made against the judge. Matter of King, 184 W.Va. 177, 399 S.E.2d 888, 892 (1990).
Sanctions have been imposed in cases involving (1) a substantial number of delayed decisions; (2) a small number of delayed decisions involving particularly long delays; and (3) proof of vindictive or other malicious motive behind an instance of delay. In re: Sommerville, 178 W.Va. 694, 364 S.E.2d 20, 23 (1987). When there are only one or two cases of delay, the courts generally have declined to sanction a judge, absent some other type of misconduct or aggravating circumstances. Jeffrey M. Shaman et al., Judicial Conduct and Ethics § 6.05 (2d ed.1995). Typically, such a situation would be handled informally with a warning kept in the judge's file in case of a similar future violation. In the cases where the judge charged with delay in one or two cases has been disciplined, there generally were aggravating circumstances *1219 that themselves bordered on misconduct, rendering the failure to adhere to the prompt disposition requirement much more egregious. Id. Examples include intentional delay to retaliate against attorneys that brought a disciplinary complaint against the judge or to benefit a judge's family member. Id.

IV
The present case involves a small number of delayed decisions, but particularly long delays. The delay in the Canady case was attributed solely to respondent because the lawyers followed the briefing schedule. Respondent admits that he simply let the case "slip through the cracks," including his failure to observe the reporting requirement. As concluded by the Commission initially, this lone blemish on respondent's record did not warrant a sanction.
The Aites case, however, presents a different problem. While respondent did not have any dishonest or self-serving motive and while it was again purely a matter of neglect, he did allow the lawyers to abuse the decision-making process. As the Commission pointed out, decisional delay is a prevalent problem in the litigation arena, and the judge, especially at the trial level, must accept the responsibility of requiring lawyers to meet briefing schedules by refusing unjustified extensions or by simply deciding the case.[5]
To respondent's credit, these two cases were not characteristic of his conduct as a judge, and we normally would not impose a sanction in such a case. However, respondent also failed to report accurately these two cases as being under advisement. While the first case was delayed and not reported because of administrative inadvertence, the Aites case was continually brought to respondent's attention by the lawyers' informal requests to submit additional authorities. Respondent thus allowed the lawyers in Aites to string the case out over a period of six years. In the meantime, the plaintiff died without a resolution of his significant claim. Respondent's failure to hold the lawyers to a reasonable time for briefing was compounded by his failure to report the matter under advisement, even after receiving a letter of warning from the Commission as a result of the Canady case.
We conclude that respondent's conduct amounted to a violation for which the minimum sanction is warranted. As noted by the Commission Chairman, the problem of judge's delays in rendering decisions and failure to comply with the reporting requirements is a problem that is occurring throughout the state and should not be "swept under the rug anymore."
Given this court's holding in In re: Decuir, 95-0056 (La.5/22/95), 654 So.2d 687, our finding of sanctionable conduct mandates the imposition of the minimum sanction of a public censure, which was the sanction recommended by the Commission.
Accordingly, it is ordered that respondent be, and he hereby is, publicly censured.
NOTES
[*] Watson, J., not on panel. Rule IV, Part II, § 3.
[1] The constitutionally created Judiciary Commission is composed of three judges, three attorneys, and three citizens who are neither attorneys nor public officials. The Commission is charged with investigating complaints of judicial misconduct, making findings, and recommending an appropriate sanction to this court. See La. Const. art. V, § 25(A).
[2] This court recently enacted a new Code of Judicial Conduct, effective July 8, 1996. The counterpart new provisions are Canon 3 A(7), which presently provides: "A judge shall dispose of all judicial matters promptly, efficiently, and fairly," and the new Canon 3 B(1), which provides: "A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business." (emphasis added).

The comments to new Canon 1 define "shall" to mean "impos[ing] binding obligations, the violation of which can result in disciplinary action."
[3] From February 1989 through September 1995, respondent's reports, with one exception, listed no cases under advisement. The one exception was the March 1992 report, which lists an unrelated matter and gives as the reason for the delay "Docket Congestion."
[4] Respondent did not recall these conversations.
[5] Respondent stated that he had no law clerk during this period.