733 So.2d 1183 (1999)
In re Judge Paul R. WIMBISH.
No. 98-0-2882.
Supreme Court of Louisiana.
April 13, 1999.
*1184 Nancy E. Rix, Hugh M. Collins, Judiciary Commission.
Steven R. Scheckman, Special Judiciary Counsel.
Charles J. Hanemann, Jr., for Respondent.
MARCUS, Justice.[*]
This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana[1] that Judge Paul R. Wimbish of the Thirty-Second Judicial District Court for the Parish of Terrebonne, State of Louisiana, be publicly censured and ordered to reimburse the Commission the costs incurred in the investigation and prosecution of this case. The Commission conducted an investigatory hearing, issued findings of fact and conclusions of law, and determined that Judge Wimbish violated La. Const. art. V, § 25(C) by engaging in willful, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The Commission further concluded that Judge Paul R. Wimbish violated La. R.S. 13:4207, La. Sup.Ct. Rule G, § 2(b) and Canons 3 A(7) *1185 and 3 B(1) of the Louisiana Code of Judicial Conduct.
Judge Wimbish assumed the office of Judge of the Thirty-Second Judicial District Court for the Parish of Terrebonne on January 2, 1980. On May 4, 1990, Ms. Mabel Demarco, a litigant in Judge Wimbish's court, filed a complaint with the Judiciary Commission, stating:
The trial of this matter took place on March 30, 1990. It is now May and no decision has been rendered. I am particularly concerned about this because it is very common knowledge in Terrebonne Parish that Judge Wimbish's decisions are delayed far in excess of what would be considered normal.
In response to the complaint, Judge Wimbish assured the Commission that he intended to bring the situation under control. Based on that assurance, the Commission cautioned Judge Wimbish and closed its file on the matter.[2]
On October 7, 1996, the Commission received a complaint from Carolyn McNabb. Ms. McNabb stated, "[i]t is well known in our Parish that Judge Wimbish holds matters under advisement for extraordinary periods of time." The complaint further alleged that Judge Wimbish failed to accurately report to the Judicial Administrator cases taken under advisement, as required by La. Sup.Ct. Rule G, § 2(b).[3]
After an investigation, the Commission filed three formal charges against Judge Wimbish. Charge I alleged that Judge Wimbish failed to report seven cases under advisement to the Judicial Administrator. Charge II alleged that Judge Wimbish failed to accurately and timely report thirty-four cases under advisement to the Judicial Administrator. Charge III alleged that Judge Wimbish failed to render, issue and sign judgments in a timely manner in fifty-six cases after the cases were submitted to him for decision on the merits.
The Commission accepted a Statement of Stipulated Uncontested Material Facts from the parties, and conducted a hearing on August 28, 1998. Although Judge Wimbish admitted most of the factual allegations, he testified that he held cases under advisement for prolonged periods of time because he was more concerned about being right and fair than about being "speedy." He further testified that his wife died unexpectedly of a heart attack in November 1993, and that he underwent coronary bypass surgery in November 1994. Judge Wimbish also emphasized that his failure to decide cases in a timely manner was not the result of spite, belligerence, dishonest motive, indifference or judicial arrogance. Regarding his efforts to decide and report future cases in a timely manner, Judge Wimbish testified that he has reorganized his schedule in a manner that permits him more time to decide cases, he has notified attorneys practicing in the Houma, Louisiana area that he will require strict adherence to La. R.S. 13:4207[4] and La. Sup.Ct. Rule G, *1186 § 2(b), and he has assumed responsibility for filing reports of cases under advisement with the Judicial Administrator.[5]
On November 19, 1998, the Commission issued its findings of fact and conclusions of law, and its recommendation regarding the appropriate measure of discipline in this case. The Commission found that Judge Wimbish failed to decide fifty-six cases in a timely manner, he inaccurately and/or delinquently reported thirty-four cases taken under advisement and their respective status to the Judicial Administrator, and completely failed to report the undecided status of seven cases. The Commission concluded that Judge Wimbish's conduct constituted a violation of La. Const. art. V, § 25(C), La. R.S. 13:4207, La. Sup.Ct. Rule G, § 2(b) and Canons 3 A(7) and 3 B(1) of the Code of Judicial Conduct, and recommended sanction in the form of public censure.
The Louisiana Constitution vests this court with exclusive original jurisdiction in judicial disciplinary cases. La. Const. art. V, § 25(C). Therefore, this court has the power to make determinations of fact based on the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission. In re Quirk, 97-1143 (La.12/12/97), 705 So.2d 172. The grounds for disciplinary action against a judge are set forth in La. Const. art. V, § 25(C), which provides, in pertinent part:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.
In addition to these substantive grounds for disciplinary action, this court, in accordance with its supervisory authority over all lower courts, has adopted the Code of Judicial Conduct, effective January 1, 1976, and amended July 8, 1996. The Code of Judicial Conduct is binding on all judges, and violations of the Canons contained therein may serve as a basis for the disciplinary action provided for by La. Const. art. V, § 25(C). In re Quirk, 705 So.2d at 176; In re Decuir, 95-0056 (La.5/22/95), 654 So.2d 687. At issue here are Canons 3 A(7) and 3 B(1), effective July 8, 1996, which provide:
CANON 3
A Judge Shall Perform the Duties of Office Impartially and Diligently
The judicial duties of a judge take precedence over all other activities. Judicial duties include all the duties of office prescribed by law. In performance of these duties, the following standards apply:
A. Adjudicative Responsibilities:
* * * *
(7) A judge shall dispose of all judicial matters promptly, efficiently and fairly.
B. Administrative Responsibilities:
(1) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate *1187 with other judges and court officials in the administration of court business.[6]
The canons were designed to promote a standard for judicial conduct that continuously reaffirms the integrity of the judiciary. Judges hold a unique position of administering justice. They symbolize the law, and, accordingly, their actions reflect favorably or unfavorably on the judicial system. For this reason, it is important that judges comply with the laws and rules governing their conduct in a manner which promotes public confidence.
In a recent case, this court recognized that judicial delay is a complex problem with many potential causes, and set forth the following list of factors to be considered when deciding whether and how to sanction a judge for such delay:
(1) the amount of delay from the date the case was ripe for decision; (2) the complexity of the case; (3) the administrative and judicial workload of the judge; (4) the number of special assignments given to the judge; (5) the amount of vacation time taken; and (6) other complaints involving delayed decisions made against the judge.
In re Tuck, 96-1444 (La.11/25/96), 683 So.2d 1214. In Tuck, a judge was publicly censured for decisional delay in two cases where the judge's inaction was compounded by his failure to comply with this court's reporting requirements. Although only a small number of undecided cases were at issue, the cases involved particularly long delays (two years in one instance and six years in the other instance) and were never reported to the Judicial Administrator as being under advisement.
In the present case, the number of cases not decided in a timely manner far exceed the number involved in Tuck. During his eighteen years on the bench, Judge Wimbish failed to render timely decisions in fifty-six cases. Of those fifty-six cases, thirty-two involved decisional delays of one to two years, and fourteen involved decisional delays of two to nearly three years. There is no evidence that these cases involved particularly complex legal issues, or that Judge Wimbish carried an unusually heavy administrative or judicial workload. The delays also cannot be attributed to any special assignments Judge Wimbish received. In sum, we can find no legitimate justification for the pattern of delayed decision-making that occurred throughout Judge Wimbish's tenure on the bench.
The failure of a judge to promptly dispose of the business of the court when there is no justifiable reason for the delay reflects adversely on the entire judicial system. Prompt disposition of cases is important to the parties appearing in court and necessary to prevent backlogs that interfere with the administration of justice. This is especially true at the trial court level where the court's primary function is finding facts and applying the law, and not one of making weighty pronouncements of law binding throughout the circuit. Because unjustified decisional delay serves to damage the esteem of the public for the judiciary, we conclude that such conduct is "prejudicial to the administration of justice that brings the judicial office into disrepute."
Judge Wimbish's failure to decide cases in a timely manner is compounded by his failure to comply with this court's rule requiring judges to report cases under advisement for longer than thirty days to the Judicial Administrator. Judge Wimbish failed to accurately and timely report the status of thirty-four undecided cases. *1188 These reports remained delinquent for various periods of time ranging from two months to fourteen months. In addition, Judge Wimbish completely failed to report seven cases, which were under advisement for periods of time ranging from four months to two years. While Judge Wimbish admits that he violated La. Sup.Ct. Rule G, § 2(b), he has offered no reasonable explanation for his conduct.
The rules of judicial administration, established by this court pursuant to its supervisory authority, were designed to promote the efficient and effective operation of the state's court system. La. Sup.Ct. Rule G, § 2(b), which requires judges to report the status of cases pending beyond the established time period, was intended to provide a system of accountability and to promote the orderly and expeditious disposition of all matters submitted to a judge. It is imperative that those responsible for administering the judicial system be furnished this information timely. Therefore, we view the reporting requirement as a necessary duty, which we expect to be followed.
Our careful review of the record leads us to the conclusion that, in the context of the constitution and the canons, Judge Wimbish's pattern of unreasonable delay without legitimate justification and of not complying with this court's reporting requirements clearly was the product of "willful" acts. Therefore, we are satisfied that the facts and evidence support the conclusion of the Commission that Judge Wimbish's repeated failure to abide by the law and rules constitutes an unexcused violation of La. Const. art. V, § 25(C), Canons 3 A(7) and 3 B(1) of the Code of Judicial Conduct, La. R.S. 13:4207 and La. Sup.Ct. Rule G, § 2(b).
Our finding of sanctionable judicial misconduct mandates the imposition of at least the minimum sanction of public censure, which is the form of discipline recommended by the Commission. Although we believe that Judge Wimbish's conduct is clearly sanctionable, his vast improvement in rendering timely decisions and the public manner in which he conveyed his new procedures to the Terrebonne Parish bar has mitigated the damage he has caused. Moreover, Judge Wimbish submitted evidence to this court indicating that he has now brought the number of cases fully submitted and under advisement for longer than thirty days to zero. Therefore, we are satisfied that the Commission's recommendation of the minimum sanction should be adopted.

DECREE
It is ordered, adjudged, and decreed that respondent, Judge Paul R. Wimbish, of the Thirty-Second Judicial District Court for the Parish of Terrebonne, State of Louisiana, be, and is hereby, publicly censured. Judge Wimbish is further ordered to pay the costs incurred in the investigation and prosecution of this case pursuant to La. Sup.Ct. Rule XXIII, § 22.
KNOLL, TRAYLOR and JOHNSON, JJ., dissent and would impose a more severe sanction.
NOTES
[*] Victory, J. not on panel. Rule IV, Part 2, § 3.
[1] The constitutionally created Judiciary Commission is composed of three judges, three attorneys, and three citizens who are neither attorneys nor public officials. The Commission is charged with investigating complaints of judicial misconduct, making findings, and recommending an appropriate sanction to this court. La. Const. art. V, § 25(A).
[2] In a letter to Judge Wimbish, the Commission stated: "[y]our recent letter offering assurances that the situation will be brought under control is taken very seriously by this Commission. It is hoped that this can be resolved in a few months."
[3] La. Sup.Ct. Rule G, § 2(b) provides:

Each judge of a district, juvenile, family, parish, city municipal or traffic court shall report to this court, through the office of Judicial Administrator, on or before the tenth day of each month, all cases which have been fully submitted and under advisement for longer than thirty days, together with an explanation of the reasons for any delay and an expected date of decision.
[4] La. R.S. 13:4207 provides:

The district judges and the judges of the city courts, shall render judgments in all cases taken under advisement by them, within thirty days from the time the cases are submitted for their decision. All motions or applications for a new trial shall be passed upon by these judges within seven days from the time such motions or applications for a new trial are submitted to them for their decision; but by written consent of the attorneys representing both sides, filed in the records or spread upon the minutes, the time herein granted may be extended for a further period of ten days, but no longer.
[5] Judge Wimbish testified that prior to the filing of formal charges against him, he had delegated the responsibility for filing reports of cases under advisement to his secretary. Judge Wimbish stated that he knew he was "ultimately responsible" for the reports, but admitted that he had been "apparently lax under those circumstances."
[6] Prior to the amendment of the Code of Judicial Conduct on July 8, 1996, the provisions of the Code of Judicial Conduct (1976), which were substantially the same, provided: 3 A(5) "A judge should dispose promptly of the business of the court"; 3 B(1) "A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials."