866 So.2d 782 (2004)
In re Judge Marcus CLARK.
No. 2003-O-2920.
Supreme Court of Louisiana.
February 20, 2004.
*783 Office of Special Counsel, Steven Robert Scheckman, Mary Frances Whitney, Counsel for Judiciary Commission.
The Boles Law Firm, Janet S. Boles, Baton Rouge, Hammond & Sills, Jon K. Guice, Monroe, Counsel for Judge Clark.
CALOGERO, Chief Justice.
This judicial discipline matter underscores the responsibility of judges to render decisions in cases before them in a timely manner, as well as to facilitate the administration of justice by reporting timely and accurately to the Judicial Administrator the cases they take under advisement. It is of paramount importance that judges respect and comply with the applicable statutes and administrative rules of this court. See In re Tuck, 96-1444, p. 8 (La.11/25/96), 683 So.2d 1214, 1218.
In the matter now before us, the Judiciary Commission of Louisiana, a constitutionally-created body charged with investigating complaints of judicial misconduct, making findings, and recommending to this court an appropriate sanction, alleged that Judge Marcus Clark of the Fourth Judicial District Court for the Parish of Ouachita failed to rule timely (within thirty days as required by La.Rev.Stat. 13:4207) in nineteen cases and that the delays in deciding these cases ranged from three months to five years. The Commission also alleged that Judge Clark failed to report timely or accurately to the Judicial Administrator that fourteen of these nineteen cases had been taken under advisement (as required by Louisiana Supreme Court General Administrative Rules, Part G, § 2).[1] The Commission further alleged *784 that Judge Clark's decisional delays and reporting failures occurred despite his earlier personal assurance to the Commission that he would take steps to ensure that cases submitted to him would be decided timely and reported timely and accurately. After issuing formal charges, the Commission conducted an investigatory hearing, made findings of fact and conclusions of law, and determined that Judge Clark violated Louisiana Supreme Court General Administrative Rules Part G, § 2, La.Rev. Stat. 13:4207, Canons 1, 2(A), 3(A)(7) and 3(B)(1) of the Code of Judicial Conduct, and La. Const. art. V, § 25(C) by his failure to decide cases in a timely manner and by his failure to report timely and accurately to the Judicial Administrator the cases he had taken under advisement.[2]
For the reasons that follow, we agree with the Commission that Judge Clark's conduct violated Supreme Court General Administrative Rules Part G, § 2 and La. Rev.Stat. 13:4207, as well as the Code of Judicial Conduct. Judge Clark's failure to decide cases timely and his persistent failure to report timely and accurately to the Judicial Administrator cases taken under advisement constitute violations of Canons 3(A)(7) and 3(B)(1). Further, Judge Clark violated Canons 1 and 2(A) by failing to observe high standards of conduct and by failing to respect and comply with the statute and the court's administrative rules. Finally, by his failure to keep track of and decide cases timely, after promising the Commission that he would do so, we find that Judge Clark willfully and persistently failed to perform his duty and that he has engaged in persistent and public conduct prejudicial to the administration of justice that brought his judicial office into disrepute, in violation of La. Const. art. V, § 25(C).
While recognizing that Judge Clark has demonstrated improvement since October of 2002 in deciding cases timely and in reporting cases taken under advisement to the Judicial Administrator, we nevertheless agree with the Commission that Judge Clark's conduct merits discipline. Cognizant of the principle that sanctions are primarily intended to protect the public, we believe that Judge Clark's conduct was prejudicial to the administration of justice, *785 and we agree with the Commission that a suspension of thirty days without pay is appropriate in this case.
JURISDICTION AND BURDEN OF PROOF
This court is vested with exclusive original jurisdiction in judicial disciplinary proceedings by La. Const. art. V, § 25(C). Pursuant to our supervisory authority over all lower courts, this court adopted the Code of Judicial Conduct, effective January 1, 1976, and amended July 8, 1996. The Code is binding on all judges, and violations of its Canons can, without more, serve as the basis for the disciplinary action provided for by La. Const. art. V, § 25(C). E.g., In re Jefferson, 99-1313, p. 3 (La.1/19/00), 753 So.2d 181, 184-85; In re Bowers, 98-1735, p. 7 (La.12/1/98), 721 So.2d 875, 879; In re Quirk, 97-1143, p. 4 (La.12/12/97), 705 So.2d 172, 176.
The charge or charges against a judge must be proved by clear and convincing evidence before this court can impose discipline. In re Bowers, 98-1735 at p. 7, 721 So.2d at 880; In re Johnson, 96-1866, p. 7 (La.11/25/96), 683 So.2d 1196, 1199; In re Huckaby, 95-0041, p. 6 (La.5/22/95), 656 So.2d 292, 296. This standard requires that the level of proof supporting the charge or charges against a judge must be more than a mere preponderance of the evidence, but less than beyond a reasonable doubt. In re Bowers, 98-1735 at p. 7, 721 So.2d at 880; In re Quirk, 97-1143 at p. 4, 705 So.2d at 176; In re Huckaby, 95-0041 at p. 6, 656 So.2d at 296.
PROCEEDINGS BEFORE THE JUDICIARY COMMISSION
On October 16, 1998, Judge Clark appeared before the Commission, at its invitation, to discuss the problem of decisional delay in two cases. Judge Clark assured the Commission at that time that the delays were attributable to his inexperience and would not happen again because he had taken steps to improve his case management system. The Commission attributed Judge Clark's dilatoriness to his then being a new judge, having assumed his office on January 1, 1997, and the members accepted his assurances that he was aware of the problem and that it would not reoccur. The Commission voted not to open a formal file in the matter.
On January 22, 2001, a complaint was filed against Judge Clark by Ms. Billie Barr, the plaintiff in a community property case pending in Judge Clark's court. Billie Auttonberry Barr v. J. Larry Barr, No. 90-1754 on the docket of the Fourth Judicial District Court for the Parish of Ouachita. In her complaint, Ms. Barr stated that Judge Clark tried the case in September 1997, but he did not render a ruling until March 2000, some thirty months later. During that time, Ms. Barr made periodic inquiries to her attorney about the matter, but still no ruling was forthcoming. In July 1999, Judge Clark told Ms. Barr that he "would work on it that weekend & rule; but he didn't." In March 2000, Ms. Barr accompanied her attorney to Judge Clark's office to discuss the delay. Judge Clark told Ms. Barr that he had "a lot [of] reasons" for the delay, but promised to work on the case over the weekend so that he could render a judgment on Monday, March 20, 2000. Judge Clark did render a judgment on that date, ruling against Ms. Barr and granting the relief sought by her former spouse.
On January 30, 2001, the Office of Special Counsel ("OSC") forwarded a copy of Ms. Barr's complaint to Judge Clark for a response. Judge Clark responded to the allegations in this complaint by letter dated April 16, 2001. In his response, Judge Clark did not dispute Ms. Barr's recitation of the facts, except to the extent Judge *786 Clark claimed he had forgotten about the case. The Commission authorized investigations and notified Judge Clark by letters dated June 20, 2001, and October 24, 2001.

Formal Charges
On August 20, 2002, the Commission filed three formal charges against Judge Clark in Nos. 0182 through 0184. Charge No. 0182 alleged that Judge Clark failed to render, issue, and sign judgments in a timely manner in nineteen specific cases after those cases had been submitted for his decision on the merits. Charge No. 0183 alleged that Judge Clark failed to report to the Judicial Administrator that seven of the nineteen cases had been taken under advisement. Charge No. 0184 alleged that Judge Clark failed to report accurately and timely to the Judicial Administrator that another seven of the nineteen cases had been taken under advisement. The Commission alleged Judge Clark's conduct violated Supreme Court General Administrative Rules Part G, § 2 and La.Rev.Stat. 13:4207. In addition, the Commission alleged Judge Clark's conduct violated the Code of Judicial Conduct, namely Canons 1, 2(A), 3(A)(7), and 3(B)(1). Finally, the Commission alleged that Judge Clark engaged in willful misconduct relating to his official duty, engaged in willful and persistent failure to perform his duty, and engaged in persistent and public conduct prejudicial to the administration of justice that brought the judicial office into disrepute, all in violation of La. Const. art. V, § 25(C).

Stipulated Facts and Conclusions of Law
On June 6, 2003, Judge Clark and the OSC jointly filed a "Statement of Stipulated Uncontested Material Facts and Stipulated Conclusions of Law." Judge Clark admitted the factual allegations of the formal charges. In particular, Judge Clark agreed that in the nineteen cases specified in the formal charges, his decisional delays ranged from three months to one year in eleven cases, approximately two to three years in four cases, over three to four years in three cases, and five years in one case. Furthermore, Judge Clark agreed that he did not report, or did not report timely, fourteen cases that had been taken under advisement. Seven of the fourteen cases were not reported at all; the remaining seven were reported inaccurately and/or delinquently, with delays in reporting ranging from three months to two years.
Based on these stipulated facts, Judge Clark and the OSC agreed that he violated La.Rev.Stat. 13:4207 and Supreme Court General Administrative Rules Part G, § 2, as well as Canon 3(A)(7) (because he failed to dispose of all judicial matters promptly and efficiently when he engaged in decisional delay and kept cases under advisement for inordinate periods of time) and Canon 3(B)(1) (because he failed to maintain professional competence in judicial administration when he failed to report or to timely report cases as having been taken under advisement). The parties agreed that Judge Clark had cooperated with the Commission since the filing of the formal charges.
The parties specifically stipulated that Judge Clark's admission to the above violations "does not constitute an admission on his part that said violations were intentional nor does it require the Commission to impose discipline as a matter of law." And in that vein, Judge Clark did not agree with the formal charges that his conduct constituted a violation of either Canon 1 or Canon 2(A), nor did he agree that he violated La. Const. art. V, § 25(C). The parties were unable to agree upon a recommended penalty, with Judge Clark proposing a Deferred Recommendation of Discipline Agreement (DRDA), and the OSC suggesting a two-month suspension.

*787 Formal Hearing

The Commission conducted a hearing on the formal charges on July 18, 2003. Judge Clark called two witnesses to testify in person at the hearing, namely the Judicial Administrator of the Fourth Judicial District and an Assistant District Attorney. Judge Clark also introduced the videotaped deposition of retired Judge Robert Kostelka and character evidence in the form of affidavits submitted by judges, lawyers, and the district court's judicial administrator.
Judge Clark admitted that decisions were delayed in the nineteen cases at issue. With respect to maintaining cases under advisement, Judge Clark conceded that some cases had been "lost" in the system because he "didn't realize" the cases were under advisement. While the testimony of the witnesses demonstrated that Judge Clark worked long days, nights and weekends, and rarely took vacation, Judge Clark suggested that he may have tried to do too much. Since 1998, Judge Clark has served on numerous court committees. He also handled every felony drug case that was filed in Ouachita and Morehouse Parishes from June 1, 1998 to December 31, 1999, all the while maintaining his full civil caseload. On several occasions, Judge Clark has been without a secretary for a period of time; on other occasions, Judge Clark has been without a law clerk, and when he does have a law clerk, the clerk is shared with another judge. When Judge Clark took office, he was allotted approximately 170 newly-filed criminal cases.[3] The courthouses in Ouachita and Morehouse Parishes each moved twice during Judge Clark's first term in office, and from May 2001 until January 2003, Judge Clark traveled to New Orleans almost every weekend so that his daughter could obtain medical treatment. Ultimately, however, Judge Clark conceded that none of these commitments caused him to take cases under advisement and then not decide them or not report them properly to the Judicial Administrator.
To improve his performance, Judge Clark has notified the lawyers who practice in the Monroe area of his resolve to decide all cases within thirty days of submission, and he asked them to notify him if he fails to do so. Judge Clark has also consulted with more senior judges who have provided counseling and advice to him, and retired Judge John Harrison has agreed to continue to advise Judge Clark.

The Commissions's Conclusions of Fact and Law and Recommendation of Discipline
The Commission found that the formal charges were proven by clear and convincing evidence. In addition to the stipulated violations of this court's administrative rules, La.Rev.Stat. 13:4207, and the Code of Judicial Conduct, the Commission concluded that Judge Clark violated Canons 1 and 2(A) by failing to observe high standards of conduct and by failing to respect and comply with the law. Finally, the Commission concluded that, by his failure to keep track of and decide cases timely, Judge Clark had engaged in willful misconduct relating to his official duty, had willfully and persistently failed to perform his duty, and had engaged in public conduct prejudicial to the administration of *788 justice, all in violation of La. Const. art. V, § 25(C).
The Commission next examined whether Judge Clark's conduct merited sanction and concluded that a public sanction of a sixty-day suspension without pay was appropriate. In doing so, the Commission made additional factual findings and legal conclusions.[4] The Commission also looked to the factors set forth by this court in In re Chaisson, 549 So.2d 259 (La.1989).[5]
The Commission found that Judge Clark "ha[d] not worked efficiently, which resulted in unacceptable delays in handing down judicial rulings to a degree that created ethical misconduct...." The Commission concluded that Judge Clark had failed to keep his October 1998 promise to correct his acknowledged decisional delay problems, as well as his July 1999 promise to Ms. Barr that he would work on her case that weekend and decide it. The Commission found that Judge Clark's misconduct reflected a pattern of problems with failure to decide cases timely and to keep track of cases submitted but not yet decided. The Commission detected a pattern of good intentions by Judge Clark to correct problems, but a failure to carry out those intentions. The Commission reasoned that Judge Clark's neglect in deciding cases timely and his insufficiency in reporting timely and accurately cases taken under advisement were evidence of his disorganization. The Commission also noted that Judge Clark was not a new judge when some of the cases cited in the formal charges were taken under advisement.
While the Commission found no evidence of bad faith on Judge Clark's part, it did believe that Judge Clark failed to cooperate prior to the filing of formal charges. The Commission cited JCL Rule VII(D), which states in pertinent part: "The failure or refusal of a judge to cooperate in an investigation, ... may be considered by the Commission in determining whether or not to recommend a sanction to the Louisiana Supreme Court and may bear on the severity of the sanction actually recommended." As was stipulated, the Commission found that Judge Clark had cooperated with the OSC after the charges were filed, but it went on to find that Judge Clark had not cooperated sufficiently prior *789 to the filing of the formal charges. The OSC prior to the charges being filed had requested certain information from Judge Clark by letter dated October 26, 2001. Judge Clark produced a partial response at the end of February 2002, according to the Commission, and he only came into full compliance with the request by the middle of March 2002. This five-month delay, the Commission reasoned, reflected a failure to cooperate to the extent that the severity of the sanction actually recommended should be affected.
The Commission also believed that, to a limited extent, Judge Clark had not taken full responsibility for his conduct. The Commission reasoned that, although Judge Clark at the hearing had taken full responsibility for his violations of the Code of Judicial Conduct and stipulated to violations of some of the Codal sections, namely Canons 3(A)(7) and 3(B)(1), he disagreed that the allegations of the formal charges indicated his violations of Canons 1 and 2(A) or La. Const. art. V, § 25(C).
The Commission concluded that the proven misconduct had a serious negative impact upon the parties to the cases that remained undecided for many months or years. However, the Commission also recognized the existence of mitigating factors. The Commission believed that Judge Clark was in good faith with regard to his wishes to be a good judge and to work diligently. The Commission further acknowledged Judge Clark's diligence in his approach to his job and his work on the drug court and on court committees and that he took relatively little vacation as mitigating factors.
Based on these considerations, the Commission recommended that Judge Clark be suspended from judicial office for sixty days, as well as ordered to reimburse and pay to the Commission costs in the amount of $714.00 incurred in the investigation and prosecution of this case.
DISCUSSION
In his brief to this court, Judge Clark primarily argues that the sanction recommended by the Judiciary Commission is inappropriate in his case. However, he also appears to disagree with some factual and legal findings of the Commission even though he does not specifically assign error to the Commission's findings of fact and conclusions of law.
First, Judge Clark indirectly contests the Commission's conclusions that he willfully engaged in misconduct related to his official duty and that he willfully and persistently failed to perform his duty by way of a footnote in his brief to this court in which he takes issue with the Commission's statement that "Judge Clark disagreed that all of the allegations of the Formal Charges indicated his violation of the Code and/or the Louisiana Constitution, and so to a limited extent he did not take responsibility for his conduct." Judge Clark contends he refused only to agree with allegations that he willfully failed to perform his duty or that he willfully engaged in misconduct related to his official duty, violations of La. Const. art. V, § 25(C). Judge Clark also references the fact that he and the OSC had agreed and stipulated that his admissions did not constitute an admission on his part either that these violations were intentional or that they required the Commission to impose discipline as a matter of law.[6]
*790 However, we note that Judge Clark declined to stipulate that his conduct violated Canon 1 ("A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.") and Canon 2(A) ("A judge shall respect and comply with the law...."). He also declined to stipulate that his conduct constituted persistent and public conduct prejudicial to the administration of justice, a violation of La. Const. art. V, § 25(C) that was also alleged in the Commission's formal charges.
Notwithstanding the absence of evidence that Judge Clark was acting in bad faith, we find that his stipulated misconduct did violate Canons 1 and 2(A). Judge Clark failed to comply with this court's administrative rules and the statutory law with regard to timely decision of submitted cases and the proper reporting of cases taken under advisement. See Code Jud. Conduct, Canon 2(A). Therefore, he also failed to establish, maintain, and personally observe a high standard of conduct in order to preserve the integrity of the judiciary. See Code Jud. Conduct, Canon 1.
We also find that Judge Clark's conduct violated La. Const. art. V, § 25(C) in that his conduct with regard to his unkept promises to the Commission and his conduct in the Barr matter constituted willful and persistent failure to perform his duty and persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. In Wimbish, we reasoned that the judge's pattern of unreasonable delay without legitimate justification and of not complying with this court's reporting requirements was clearly the result of "willful" acts. 98-2882, p. 7, 733 So.2d at 1188. That reasoning applies equally to Judge Clark's case, even if he did not "intentionally" fail either to decide cases timely or to report properly to the judicial administrator cases taken under advisement. Judge Clark made promises to the Commission in October 1998 to do better in timely deciding cases and he also made specific promises to a party appearing before him to decide her case. In both instances, Judge Clark failed to live up to his promises. As was stipulated, Judge Clark failed to decide timely nineteen cases taken under advisement and failed to report fourteen of those cases timely or accurately to the Judicial Administrator. As Judge Clark concedes in brief, it was not until October of 2002, after formal charges were filed in August of 2002, that he finally brought his docket into compliance with the administrative rules of this court and La.Rev.Stat. 13:4207. In that regard, his conduct amounted to willful and persistent failure to perform his duty. This failure, as exemplified by the Barr case in which the judge broke his promise to rule timely made to a party and her lawyer who confronted him and against whom he later ruled, constituted willful failure to perform his duty and amounted to persistent and public conduct prejudicial to the administration of justice that brought his judicial office into disrepute, in violation of La. Const. art. V, § 25(C).
While Judge Clark has repeatedly stated that he has not tried to present excuses for his failures, we agree with the Commission that the evidence, primarily Judge Clark's own testimony, shows that his other court duties, the intermittent absences of his law clerk and secretary, the illness of his daughter, or his inexperience could not in the end account for his failure to live up to his specific promises to do better when he appeared before the Commission in October of 1998. Because Judge Clark refused to acknowledge these violations of his judicial and Constitutional duties, we *791 agree with the Commission's finding that Judge Clark's acceptance of his responsibility has not yet been full and complete.
Second, Judge Clark appears to dispute the Commission's finding that he failed to cooperate sufficiently with the Commission's investigation prior to the filing of formal charges. The Commission noted that Judge Clark and the OSC "played telephone tag" during the later part of 2001, and when they finally spoke, Judge Clark requested an extension of time in which to comply with the OSC's request. That request primarily demanded that Judge Clark perform a review of all his cases to date to determine if any had been taken under advisement and either not decided or not properly reported to the Judicial Administrator. The Commission noted that Judge Clark was given a thirty-day extension on December 18, 2001, and again on January 18, 2002. On February 25, 2002, Judge Clark apologized to an assistant to the OSC and produced a partial response at the end of February 2002, and came into full compliance in the middle of March 2002. The Commission believed this five-month delay constituted a failure to cooperate that should affect the severity of the sanction pursuant to JCL Rule VII D. Judge Clark disputes that finding and believes that he reasonably relied on assurances by the Special Counsel, who was away on vacation at some point in February 2002, that he could send in the requested information after the Mardi Gras holiday.
We disagree with the Commission that Judge Clark's failure to provide the information was necessarily a failure to cooperate with the investigation. Given Judge Clark's history, we find the delay to be more likely another symptom of Judge Clark's disorganization, rather than a failure to cooperate with the Commission's investigation. Accordingly, we do not find that the allegation that Judge Clark failed to cooperate prior to the filing of the formal charges was proved by clear and convincing evidence.
Nonetheless, after thorough review of the record evidence, we conclude that the remaining charges were proved by clear and convincing evidence and that the evidence otherwise supports the Commission's findings of fact and conclusions of law. We find that Judge Clark violated Supreme Court General Administrative Rules Part G, § 2 and La.Rev.Stat. 13:4207, as stipulated to by Judge Clark. Additionally, Judge Clark's failure to decide cases timely and his consistent failure to report properly cases taken under advisement constituted violations of Canons 3(A)(7) and 3(B)(1), as also stipulated to by Judge Clark. Further, Judge Clark violated Canons 1 and 2(A) by failing to maintain and personally observe high standards of conduct and by failing to respect and comply with the law. Finally, by his failure to keep track of and decide cases timely, after promising the Commission that he would do so, as well as failing to fulfill his promise to a party and her lawyer in one of the cases taken under advisement that he would rule on her case, we find that Judge Clark willfully and persistently failed to perform his official duty and that he has engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of La. Const. art. V, § 25(C).
Accordingly, the only issue left before us is the appropriate sanction, and Judge Clark does indeed vigorously challenge the Commission's recommendation of a suspension of sixty days. Judge Clark asserts that the recent case of In re Sharp, 03-2256 (La.10/29/03), 856 So.2d 1213, in which a sixty-day suspension was imposed by this court, should not control the instant *792 case.[7] He also contends that, analyzed under the factors of Tuck, the Commission's recommended sanction of a sixty-day suspension is not warranted. Instead, he suggests that a lesser sanction of public censure, as was imposed in Wimbish,[8] would be sufficient in his case to serve the goals of judicial discipline.
In determining an appropriate sanction, we are cognizant of the principle that the primary purpose of the Code of Judicial Conduct is to protect the public rather than simply to discipline judges. In re Harris, 98-0570 (La.7/8/98), 713 So.2d 1138; In re Marullo, 96-2222 (La.4/8/97), 692 So.2d 1019. With regard to decisional delay cases, we have explained that the problem is a complex one because of the myriad of potential causes. Tuck, p. 8, 683 So.2d at 1218. In Tuck, we noted that some delays are defensible because they result from causes beyond the judge's control, such as excessive caseload, insufficient numbers of sitting judges or staff, structural inefficiency inherent in the judicial system, and case complexity. Id. On the other hand, some delays are indefensible, including non-structural inefficiency, that is, a delay due to the judge's own inefficiency, as well as belligerence or spite, disability or infirmity, and sloth or neglect. Id., pp. 8-9, 683 So.2d at 1218. We also explained in Tuck that determining the cause of the decisional delay in a particular case is a process of elimination. Id., p. 9, 683 So.2d at 1218. Moreover, only indefensible delay constitutes judicial misconduct, because excessive, unjustified delay is prejudicial to the expeditious administration of the court's business. Id. (quoting Charles Gardner Geyh, Adverse Publicity as a Means of Reducing Judicial Decision-Making Delay; Periodic Disclosure of Pending Motions, Bench Trials and Cases Under the Civil Justice Reform Act, 41 Clev. St. L.Rev. 511, 520 (1993)).
Consequently, sanctions to be imposed in cases involving the failure to render decisions timely should be decided on a case-by-case basis. Tuck, 96-1444, p. 9, 683 So.2d at 1218. We have previously set forth several factors to consider in deciding whether and how to sanction decisional delay, including: (1) the amount of delay from the date the case was ripe for decision, (2) the complexity of the case, (3) the administrative and judicial workload of the judge, (4) the number of special assignments given to the judge, (5) the amount of vacation time taken by the judge, and (6) other complaints involving delayed decisions made against the judge. Id.
Because there can be no reasonable dispute that a public sanction is called for in this case, we will examine the Tuck factors to determine the appropriate sanction. First, we note that Judge Clark failed to decide timely nineteen cases taken under submission, and that the amounts of delay *793 ranged from three months to one year in eleven cases, approximately two to three years in four cases, more than three to four years in three cases, and five years in one case. Second, there is no indication in the record that any of these civil cases was inordinately complex. While Judge Clark's legal experience before taking the bench was primarily in the criminal law area, he did not attribute any of these delays to a lack of experience in the civil law. Third, we do acknowledge that Judge Clark was faced with a large docket, especially given his involvement in the drug court, which would reasonably be considered a special assignment, and that he participated in a number of administrative matters for the district court. However, as we have previously noted, Judge Clark himself did not attribute his failure to decide these cases timely to an excessive administrative or judicial workload, or to his work with the drug court. Instead, he opined that he voluntarily took on too much work, perhaps, both judicial and outside the court, and it was clear that these cases simply fell through the cracks on account of Judge Clark's own inefficiency, rather than that of the district court or excessive demands upon his time. Though Judge Clark argues that at least one additional judge should be assigned to the district court, we do not find that there was a structural inefficiency in that court that caused these decisional delays. Fourth, we also recognize that Judge Clark worked diligently, took few if any vacations, and traveled frequently on weekends to obtain medical treatment for his daughter. However, again we must accept Judge Clark's own testimony that his failure to decide the cases could not reasonably be attributed to his daughter's medical requirements or, for that matter, the absences of either his secretary or his law clerk. Finally, and most importantly, we note that there had been previous instances of decisional delay, other than these nineteen, and that Judge Clark appeared before the Commission to address them. At that time, he explained that he was a new judge and that he had taken steps to ameliorate the problem, a promise the Commission accepted in deciding to close his file without taking any formal steps. Notwithstanding these promises, Judge Clark still failed to decide timely cases submitted to him, one of them taken under advisement just days following his appearance before the Commission. Thus, it is clear that Judge Clark's previous appearance before the Commission did not result in curing the problems of decisional delay he was experiencing. As we noted in Tuck, decisional delay problems have become more prevalent, and it is the responsibility of the trial judge to prevent them.
In addition to the decisional delay problems experienced by Judge Clark, he also failed to report or to report accurately and timely fourteen of these cases as being under advisement. The rules of judicial administration established by this court were designed to promote the efficient and effective operation of the state's court system. Part G, § 2 of our administrative rules, requiring judges to report the status of cases pending beyond an established time period, was intended to provide a system of accountability and to promote the orderly and expeditious disposition of all matters submitted to a judge. Accordingly, we have found it imperative that the judicial administrator be furnished with this information in a timely manner. Wimbish, 98-2882, p. 7, 733 So.2d at 1188. Thus, the reporting requirement is a necessary duty with which the judge is expected to comply. Id.
While Judge Clark characterizes his case as more similar to Tuck and Wimbish than Sharp, we reiterate that decisional *794 delay cases are to be decided on a case-by-case basis. When Judge Clark previously appeared before the Commission and promised the Commission that he would resolve the decisional delay and reporting issues, a promise that prompted the Commission to close his file without taking any formal steps, he was given a second opportunity to remedy those issues. Yet, he failed to live up to his promise to the Commission in nineteen cases and he failed to report fourteen of those cases timely and accurately to the Judicial Administrator. Nonetheless, we note that Judge Clark has since taken what appear to be sufficient steps to cure his decisional delay and reporting problems. Accordingly, we conclude that Judge Clark's conduct merits a suspension from judicial office without pay for a period of thirty days.

DECREE
For the reasons assigned, it is ordered that Judge Marcus Clark of the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana, be suspended from judicial office for thirty days without pay. It is further ordered that Judge Clark reimburse and pay to the Judiciary Commission costs in the sum of $714.00 incurred in the investigation and prosecution of his case, pursuant to Supreme Court Rule XXIII, § 22.
RESPONDENT SUSPENDED, THIRTY DAYS WITHOUT PAY, AND CAST FOR COSTS.
VICTORY and JOHNSON, JJ., dissents and assigns reasons.
JOHNSON, Justice dissenting.
I agree with the majority's findings regarding judicial misconduct. However, because of the seriousness and the persistence of Judge Clark's misconduct, I agree with the Judiciary Commission's recommendation that a suspension of 60 days, without pay, is warranted in this case.
VICTORY J., dissenting.
I agree with the majority opinion, but would impose a 60 day suspension without pay as recommended by the Judiciary Commission.
NOTES
[1] La.Rev.Stat. 13:4207 and Supreme Court General Administrative Rules Part G, § 2 both relate to cases taken under advisement. La.Rev.Stat. 13:4207 provides in pertinent part that district judges "shall render judgments in all cases taken under advisement by them, within thirty days from the time the cases are submitted for their decision." Part G, § 2 provides in pertinent part:

(a) When Submitted. A case or other matter shall be considered as fully submitted for decision to the trial judge, and should be decided, immediately upon the conclusion of trial or hearing, and judgment signed expeditiously thereafter.
* * *
(b) Reports. Each judge of a district, juvenile, family, parish, city municipal or traffic court shall report to this court, through the office of Judicial Administrator, on or before the tenth day of each month, all cases which have been fully submitted and under advisement for longer than thirty days, together with an explanation of the reasons for any delay and an expected date of decision.
[2] The Commission alleged violations of Canon 1 (a judge shall uphold the integrity and independence of the judiciary), Canon 2(A) (a judge shall respect and comply with the law), Canon 3(A)(7) (a judge shall dispose promptly of the business of the court), and Canon 3(B)(1) (a judge shall diligently discharge his administrative responsibilities and maintain professional competence in judicial administration).

La. Const. art. V, § 25(C), provides in pertinent part:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute....
[3] Prior to his election to the bench, Judge Clark was an Assistant District Attorney in the 4th J.D.C. To avoid the necessity of determining the specific cases from which he should be recused as a judge, the court decided to allot to the other judges all of the criminal cases Judge Clark would have had in his division of court, and to assign to Judge Clark each newly-filed case thereafter, up to approximately 170 cases.
[4] The Commission referenced two decisional delay cases: In re Tuck and In re Wimbish, 98-2882 (La.4/13/99), 733 So.2d 1183. In Tuck, the court censured a judge for failing to render timely decisions in two cases taken under advisement for two years and six years, respectively, and to report the cases to the Judicial Administrator. In Wimbish, the court censured a judge for failing to render timely decisions in fifty-six cases with decisional delays of one to two years in approximately thirty-two cases and delays of two to three years in fourteen cases; the judge was also delinquent in reporting thirty-four cases overdue for decision to the Judicial Administrator and never reported seven cases overdue for decision to the Judicial Administrator despite decisional delays ranging from four months to two years.
[5] In Chaisson, set forth a non-exclusive list of factors a court may consider in imposing discipline on a judge:

(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct;
(b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
[6] In response, the Commission noted the Special Counsel's counter position that an intentional violation of the code is not a prerequisite for a recommendation of discipline and that such a recommendation may be premised upon either an unintentional violation or incompetence, citing In re Shea, 02-0643 (La.4/26/02), 815 So.2d 813; In re Hunter, 02-1975 (La.8/19/02), 823 So.2d 325.
[7] In Sharp, the judge failed to render timely decisions in five cases and failed to report those cases properly to the Judicial Administrator. The Commission, through a Deferred Recommendation of Discipline Agreement, placed the judge on probation for three years with certain conditions. Thereafter, the judge failed to decide one case timely and failed to report those cases to the Judicial Administrator. Though he appeared at the hearing and admitted to the allegations in the formal charges, the judge had not cooperated with the Commission and he had still not handed down a decision in the charged case. Because the record was devoid of any evidence that the judge had demonstrated any improvement in his ability to decide cases timely, we imposed a sanction of a sixty-day suspension without pay. 03-2256, p. 6, 856 So.2d at 1216-17.
[8] In Wimbish, three justices dissented and would have imposed a more severe sanction. 98-2882, 733 So.2d at 1188.